## BANE v. IRWIN et al., Appellants.

Division Two, February 24, 1903.

Negligence: DAMAGES: PERSONAL INJURIES: ASSUMPTION OF RISK: FEL-LOW-SERVANTS: VERDICT FOR $6,000: CASE STATED.  Plaintiff was employed in a mine operated by defendants, and was engaged in cutting dirt and blasting.  Prior to the injury plaintiff had been put to work, by defendant's ground foreman, boring holes in some logs in which blasting powder was to be placed for the purpose of tearing away the logs and clearing the way for the drift.  Plaintiff bored three holes and was then ordered by the foreman to prepare three shots with which to load the holes.  He prepared the shots and handed them to the foreman, who placed the shots in the holes and directed plaintiff to fire the left-hand shot, stating that he would fire the right-hand one at the same time.  Plaintiff saw the foreman standing in front of the center shot, in the act of lighting it, but could not see from his position whether or not he had lighted it.  After working with this shot for a few seconds the foreman said to plaintiff, "Let's get out of here."

They thereupon retired about one hundred feet from the shots, and plaintiff inquired of the foreman if he had lighted the center shot. The foreman replied, "No, I was afraid to." Very soon after this reply one of the shots exploded, and shortly afterward another exploded. The foreman then ordered plaintiff to go back and light the center shot. Plaintiff started to comply with this order but just as he got in front of the shot it exploded, putting out both of plaintiff's eyes, and otherwise injuring him. *Held, first*, that the foreman was guilty of negligence in sending plaintiff to fire. the undischarged shot, without waiting a reasonable time for its explosion; *second*, that plaintiff did not assume the risk, but had a right to rely on the foreman's assurance that the third shot had not been lighted; *third*, that the foreman and plaintiff were not fellow-servants, since the foreman, in directing plaintiff what he was to do, and when and how he was to do it, was performing the master's duty, and was a vice-principal; *fourth*, that a verdict for $6,000 for the loss of both eyes to a young man cannot be set aside on the ground that the damages are excessive.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins*, Judge.

AFFIRMED.

*Percy Werner, Howard Gray* and *Galen & A. E. Spencer* for appellants.

(1) Plaintiff charged that defendant negligently sent him into a dangerous place to work, he being in ignorance of the danger, and defendant having actual knowledge thereof. The proof wholly failed to establish the cause of action alleged. (2) Plaintiff acted at the time in question on his own judgment and of his own volition, without hesitation or objection, with as full knowledge and opportunity for knowledge as had Gibbs, the alleged foreman, and in his own way, and assumed the risks involved which were those incident to the service in which he was engaged. McArthur Bros. v. Trout, 88 Ill. App. 638; King v. Morgan, 109 Fed. 446; Miller v. Western Stove Co., 61 Ill. App. 662; Findlayson v. Utica M. & M. Co., 67 Fed. 507. (3) Plaintiff and Gibbs, the alleged foreman, were fellow-servants

engaged in a common work at the time in question. Hawk v. McLeod Lumber Co., 65 S. W. 1022; Marshall v. Schricker, 63 Mo. 310; Card v. Eddy, 129 Mo. 514; Grattis v. Railroad, 153 Mo. 407.     (4)    Plaintiff's first instruction was erroneous. It summarized all the evidence favorable to plaintiff's side of the case. Aaron Co. v. Hirschfield, 89 Ill. App. 205; Mitchell v. Transfer Co., 65 S. W. 835. It failed to require a finding of knowledge of the danger on the part of the defendant. It introduced a new cause of action. It charged, as a matter of law, that Gibbs was not a fellow-servant of plaintiff's. It did not confine the jury to a consideration of the evidence introduced as to certain facts.    McCarty v. Hotel Co., 144 Mo. 397; Boemer v. Co., 69 Mo. App. 601.    (5)    Plaintiff's third instruction, purporting to furnish a measure of damages, was erroneous. (6)    The damages are excessive.

*Thomas & Hackney* for respondent.

(1)    The first instruction given by the court for plaintiff was proper and submitted to the jury no issue not raised by the pleadings.    The issue before the jury was whether plaintiff had been negligently ordered into a place of danger by defendants' foreman, Gibbs.    The qualifying clause in this instruction did not go beyond the limits of the charge of negligence in the petition that the foreman "negligently and carelessly ordered and directed plaintiff to go back and light the other shot." Dowling v. Allen, 74 Mo. 20; McPheeters v. Railroad, 45 Mo. 24.    (2)    The order of the foreman to the plaintiff to return and fire the shot was an assurance from him, on which plaintiff had the right to rely, that it was reasonably safe to so return and light the shot.    Herdler v. Buck's Stove and Range Co., 136 Mo. 17; Sullivan v. Railroad, 107 Mo. 78.    And the plaintiff did not, under these circumstances, assume the risk of the danger of returning and lighting the shot in obedience to the order.    Stevens v. Railroad, 96 Mo. 212. (3) While plaintiff had seen Gibbs, the foreman, place his miner's

lamp to the fuse of the center shot after the other two shots had been lighted and were "spitting," he was not in a position to know whether Gibbs had in fact lighted this shot, being at the time some twelve or fifteen feet away from Gibbs in a dark drift, and he was not in as good a position as Gibbs to determine whether the shot had in fact been lighted. On plaintiff's inquiring of Gibbs as to whether he had lighted this shot, he was informed that he had not. Gibbs knew or ought to have known what he had done. The parties were not on equality either as to authority nor as to information or means of knowledge as to whether the shot was in fact on fire. (4) Gibbs, the ground foreman in the mine where plaintiff worked, had control of the work in which plaintiff was engaged and was the person intrusted by defendants to direct plaintiff how, when and where the work should be done. This constituted Gibbs a vice-principal, and if he was negligent the defendants are chargeable with the consequences. Miller v. Railroad, 109 Mo. 350; Russ v. Railroad, 112 Mo. 45; Donohoe v. Kansas City, 136 Mo. 670; Foster v. Railroad, 115 Mo. 165; Dayharsh v. Railroad, 103 Mo. 570; Cox v. Granite Co., 39 Mo. App. 424. The fact that Sennett Rankin was general ground foreman, having general charge of all of defendants' mine and gave directions to each of the ground foremen in the several mines as to the work he desired done in his particular mine, did not render each ground foreman a fellow-servant of the men in his particular mine and under his immediate control. The mere fact that Gibbs, as foreman, did some work occasionally which might have been entrusted to other servants, did not render him a fellow-servant with plaintiff. Miller v. Railroad, 109 Mo. 350. (5) It was not necessary for plaintiff to show that Gibbs wrongfully concealed from plaintiff the fact that the third shot had been lighted. It was sufficient to show that the act was negligently done. Gannon v. Gas Co., 145 Mo. 502. This case was fairly tried; the instructions given by the court submitted the case to the jury in a more favorable light to defendants than they were strictly entitled to;

the jury found the issues for the plaintiff in accordance with the decided weight of the evidence and assessed the damages at a moderate sum, considering plaintiff's age and the total loss of his eyesight.

GANTT, P. J.—This is an action for damages for personal injuries. The defendants were partners engaged in operating lead and zinc mines at Duenweg, Jasper county, Missouri, under the name and style of Ground and Irwin. The plaintiff was in their employ, working in one of their mines, cutting dirt and blasting. On March 24, 1899, one Thomas Gibbs was mine boss or ground foreman in the mine at which plaintiff was working for defendants. Defendants had other mines in that immediate vicinity and Sennett Rankin was the general ground foreman over the ground foremen in each of said mines.

"Plaintiff for his cause of action alleges that on said 24th of March, 1899, the said Gibbs as such foremen had full charge and represented the defendants in the said mine with full power and authority to act for and represent defendants in the conduct of their business therein. That on said day the said ground foreman ordered plaintiff to drill two holes and prepare three shots, and plaintiff made the three necessary holes for the said shots, and the said foreman loaded said shots and tamped them, and then and there ordered plaintiff to burn one shot, and then and there stating that the said ground foreman would at the same time burn one shot. That plaintiff set fire to one shot and the ground foreman, as plaintiff then supposed and believed, set fire to one of the other three shots, when said ground foreman said to the plaintiff, 'Let's get out of here. It is time for us to get out.' Plaintiff and said ground foreman then went down to the switch, 100 to 125 feet from where the shots were. That after they had reached the switch two shots went off, being all the shots that plaintiff supposed had been lighted. When the said two shots went off, the said foreman, while acting in the scope of his authority, and while representing the defen-

dants with full power to bind defendants, negligently and carelessly ordered and directed plaintiff to go back and light the other shot, saying: 'Go right up there and light that other shot.'    And the plaintiff then and there believing that the other shot had not been lighted by said ground foreman, and not knowing that the same had been lighted, in obedience to said order went into the drift and to the shot to light the shot, and as soon as plaintiff got to the shot and before he could turn and get away or do anything, it went off and exploded and knocked plaintiff around on his hands and knees.    That by the said explosion, crushed rocks and flint and gravel were thrown with great force and violence against plaintiff's head and body and into both of plaintiff's eyes, whereby plaintiff was greatly bruised and both of his eyes put out and utterly destroyed. That he thereby suffered great pain and anguish of body for a long period of time, to-wit, six months, and suffered great anguish of mind, and his eye-sight entirely lost.

"Plaintiff further alleges and charges the fact that at the time the plaintiff fired one of said shots, and the said foreman announced that the said foreman would discharge one other of said shots, the said foreman lighted both of said shots, but wrongfully and negligently concealing from plaintiff the fact to be that he had lighted two of said shots, and the said ground boss and the said defendants were guilty of gross negligence in ordering plaintiff to return to fire the remaining shot without first notifying plaintiff that the said third shot, or the fuse thereof, had been theretofore lighted by the said ground foreman, and that by reason of said negligence and carelessness of the said defendants through their said agent, the said ground foreman, plaintiff suffered the injuries complained of.

"Plaintiff further states that by reason of the premises and the negligence of the defendants as aforesaid, and the explosion aforesaid, he was damaged and injured in the sum of $20,000.

"Wherefore, plaintiff prays judgment against defendants for the said sum of $20.000."

The answer was a general denial, a plea of assumption of the risk, and that the negligence if any was that of a fellow-servant.    There was a trial and verdict for plaintiff for $6,000.    Defendants appeal.

The evidence was confined to the immediate circumstances and was substantially the following:

Plaintiff was twenty-three years old at the time of the injury.  His physicians testified he was totally blind as a result of his injuries.

Immediately prior to the injury, the plaintiff had been put to work by his foreman, Gibbs, boring holes in some logs constituting the timbering of an old shaft, which shaft was in the way of a drift being extended under ground.

After boring the holes in the logs, blasting powder was to be placed in the holes and exploded for the purpose of tearing out the logs and clearing the way for the drift.    Plaintiff bored three holes, one in the lower log near the ground on the left-hand side, another in the center log about two or three feet higher, and another, a third, in another log some two feet still higher and on the right side of the drift.    After boring these holes, he started to bore a fourth hole when his auger broke. Gibbs, the foreman, came along about that time and told plaintiff to prepare three shots for the purpose of loading the holes already bored.    After preparing these shots, plaintiff handed them to Gibbs who placed the shots in the holes. Gibbs then directed the plaintiff to fire the left-hand shot, stating that he, Gibbs, would fire the right-hand shot at the same time.    The shots were lighted by placing a miner's lamp against the fuse. Gibbs lighted the right-hand shot as plaintiff undertook to light the left-hand shot.    The fuse in the right-hand shot caught fire more readily than the one which plaintiff was undertaking to light, whereupon plaintiff took his miner's lamp and split the end of the fuse on this shot in order to make it light more readily, and then set fire to it.    This was done just after plaintiff observed the right-hand shot spitting.    Plaintiff's shot then spit also, which indicated that the fuse was burning pretty

rapidly and that the fire was nearing the powder. Gibbs then stepped over to the center shot and placed his miner's lamp against the fuse of this shot, while plaintiff walked back into the drift some twelve or fifteen feet. Plaintiff saw Gibbs standing in front of the center shot, in the act of lighting it, but could not see from his position whether Gibbs lighted it or not. After working with the center shot for a few seconds, Gibbs turned to the plaintiff and said, "Let's get out of here." They thereupon hurried away from the scene of the shots about one hundred feet into another drift, where plaintiff asked Gibbs if he had lighted the center shot. Gibbs replied, "No, I was afraid to." Very soon after this reply one of the shots exploded and Gibbs remarked: "We are killing Spaniards." Within a few seconds thereafter, another shot exploded. Immediately on the explosion of the second shot Gibbs ordered plaintiff to go back and light the other shot. In obedience to this order, plaintiff went back to light the center shot, and just as he got in front of the shot it exploded, putting out both of plaintiff's eyes and otherwise seriously injuring him.

On the trial Gibbs admitted lighting the right-hand shot, but denied lighting the second shot, his contention being that the plaintiff lighted the left-hand shot and also the center shot. He further contended that after they retired to the drift only one shot exploded, and that after the explosion of this shot plaintiff went back to light the other two shots. On cross-examination, when pressed on this point of ordering the plaintiff back, this witness said, "I wouldn't make affidavit that I didn't, but I made it in the first statement that I don't believe I did" [meaning a statement given to the insurance company shortly after the accident].

This witness was contradicted not only by the plaintiff but by other witnesses to whom he made the statement on the day following the accident, that if he had it to do over he would not order the plaintiff back on to the shot.

On the question of the authority of Gibbs and his duties as ground foreman, the plaintiff testified that Gibbs is what they called ground boss or ground foreman, who gave directions to plaintiff and other men working on the ground, as to the time, manner, character and place of their work. Gibbs was introduced as a witness by the defendants and on the defendants' behalf testified:

"Q. What were your duties in the shaft? A. Showing the men where to work, principally.

"Q. What else? A. Be as careful as I could by my instructions.

"Q. Did you work yourself? A. I did not do but very little work myself. Whenever a man was short I filled his vacancy as near as I could.

"Q. Who was your superior? A. Mr. Rankin.

"Q. What are his duties? A. His duties were to look after the whole thing and direct me what to do, etc.

"Q. Those orders related to what? A. The ground work."

On cross-examination Gibbs testified as follows:

"Q. You ordered the men, or you directed the men down there in the mine? A. That was my business.

"Q. What to do? A. Yes, sir.

"Q. And where to work and what to do? A. Yes, sir.

"Q. And how to do it? A. When they didn't know I showed them how.

"Q. How long had you been foreman in the ground? A. Why, for the company, I suppose I had worked eighteen months altogether.

"Q. You had other work to do after you say you heard one shot—you had other work to do and you went off to do it? A. I didn't have any particular work to do. I was there about the ground.

"Q. You went into some other drift? A. Yes, sir.

"Q. And gave the men direction what to do in some other drift? A. Yes, sir."

In describing the character of the order given plaintiff by Gibbs to go back and fire the third shot plaintiff testifies: "A. He just says 'go back and light that third shot and clean out a place there to put in a false post before dinner.' He says, 'I want to catch that up before dinner' and talked like he meant it."

On being inquired of as to whether he knew that the third shot was on fire or had been fired when he went back on to it, plaintiff testified:

"A. No sir, I didn't know it was fired. I wish I had known it."

On the trial defendants undertook to advance the theory that the center shot caught fire from the explosion of one of the other shots, and examined Sennett Rankin on this subject. This witness stated that it might be possible for such a thing to occur. On cross-examination he admitted that in twenty years' experience he had never known of such a thing happening, and further that in case the center shot had been affected by the explosion of the other two shots it would have gone off at the same time. It was also shown that where a shot was set on fire by burning the fuse, as Gibbs had fired the center shot, it took longer for the fuse to burn and for the shot to explode than where the fuse had been split, as in the case of the other two shots.

I. The first instruction is assailed on four distinct grounds: The first is that it is entirely too long and summarizes the evidence favorable to plaintiff alone. The instruction is open to the objection of being entirely too long. The purpose of instructions is to give the jury a concise statement of the legal propositions involved in the case and leave them to apply the law thus given them to the facts. But inasmuch as we find no misstatement of the evidence and no assumption of any controverted fact, we do not feel justified in reversing the case, however much we

disapprove the style and length of the instructions. We refrain from reproducing it lest it become a precedent.

The gravamen of the petition was that defendant's ground foreman negligently sent plaintiff upon the undischarged shot and that plaintiff was ignorant of the fact that it had been lighted and his injury had occurred because the foreman had lighted it, and plaintiff relying upon his assurance, that it was not, had been hurt.

The jury were required to find and did find that the foreman had lighted the fuses for two shots; that he was bound to know that and yet, when only two exploded, without waiting. a reasonable time, he negligently sent plaintiff back to fire the third shot and thereby the injury was caused.

The instruction stated a liability and was within the issue presented by the petition to the jury. [Herdler v. Buck's Stove & Range Co., 136 Mo. 3.]

II. The plaintiff did not assume the risk to which he was exposed by the negligent order of his foreman. The plaintiff's evidence tended to prove that the foreman had lighted the third shot but had told the plaintiff he had not done so; that plaintiff left the foreman in the immediate vicinity of the third shot, and that plaintiff had every reason to rely upon what Gibbs, the foreman, told him, and that the foreman, without waiting for the shot to explode, ordered plaintiff back into the dangerous place. As said by Judge SHERWOOD in Sullivan v. Railroad, 107 Mo. loc. cit. 78, the fact of the presence of the ground foreman and his order to plaintiff was tantamount to an assurance that it was safe for plaintiff to go back into the mine, and plaintiff had a right to rely on the judgment of the foreman that he would perform his duty to him and especially is it applicable in this case where plaintiff knew there were only three shots prepared and two had exploded. When he received the assurance of Gibbs who was last at the shots that he had not fired the third, it was entirely reasonable for

him to act upon the assumption that it was safe to return and fire the shot as directed by the foreman. Plaintiff did not assume the risk of this danger which his foreman was bound to know, and which he did not know. The two men were not on equality either in service or opportunity to know the hazard of the undertaking.

III.   Gibbs was not a fellow-servant with plaintiff. The evidence shows he had control of the plaintiff's work, to direct how, when and where he should work. The fact that they both had a general superintendent over them in the person of Mr. Rankin did not make them fellow-servants. The foreman in directing plaintiff's work, what he was to do, where he was to do it and how he was to do it, was performing the master's duty *pro hac vice,* and was a vice-principal.   [Donahoe v. Kansas City, 136 Mo. 670; Miller v. Railroad, 109 Mo. 350; Russ v. Railroad, 112 Mo. 45; Moore v. Railroad, 85 Mo. 588.]

We agree with counsel for defendant, "it is the *act* and not the *rank* of the vice-principal which determines whether two employees are fellow-servants." In this case the acts of Gibbs were the acts of the master.   It is true that, according to the evidence, Gibbs at times did the work of a servant in loading and firing the shots, and had the injury occurred while he was performing a servant's duty, he and plaintiff would have been fellow-servants, but it is clear that the negligence in this case was the negligent order to plaintiff to return to the dangerous place and fire the remaining shot and the injury was the consequent result of that order, and not the negligent loading and tamping of the shot.   While Gibbs acted in a dual capacity, the injury here resulted from the order in making which he represented the master.   It was not at all necessary that the plaintiff should prove or the jury find that Gibbs willfully concealed from plaintiff that he had lighted the third shot.   It was sufficient if it appeared that he had negligently lighted it and knowing he had done so did not wait until it could

be ascertained it had not ignited before sending plaintiff back into the drift to fire it a second time.

The instruction as to the measure of damages was sufficient and was not misleading. [Minter v. Bradstreet, 174 Mo. 444.] The amount of damages for the loss of both eyes to a young man in no manner smacks of prejudice or passion.

It results that the judgment must be and is affirmed. All concur.