## BIEN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, November 29, 1904.

1. **MASTER AND SERVANT: Vice-Principal.** Where a foreman has authority to regulate and control men employed by his principal in the performance of their work, he is as to those men vice-principal.

2. **———: Fellow-Servant.** A workman under a foreman whose orders he is bound to obey, whose faults or delinquencies he could not report to a common superior so as to insure protection against them, is not a fellow-servant of the latter.

3. **———: ———: Vice-Principal.** Where a foreman in the employ of a street railway company was charged with the duty of sending out cars and their crews from the car sheds, he was not the fellow-servant of a motorman in charge of one of the cars, but was vice-principal so as to render the street railway company liable for his negligence in injuring such motorman while the latter was equipping his car so as to take it from the shed.

4. **———: Vice-Principal and Fellow-Servant: Dual Capacity.** An employee may be vice-principal while performing one portion of his duties and a fellow-servant while performing another portion of his duties.

5. **———: ———: ———.** Where a foreman, who had authority to direct the work of other employees, performed an act which it was not his duty to do himself, but which he had authority to order the men under him to do, he was vice-principal and not a fellow-servant, so as to render his principal liable for damages to one of the workmen, caused by doing the act negligently.

6. **———: Contributory Negligence.** Where a motorman in taking his car out of the car-shed under the direction of the foreman,

stopped his car for the purpose of getting sand for use on the trip, and while he was in the act of filling a bucket of sand from the bin, close to the track, the foreman, in endeavoring to get his car out of the way of another car, ran it against him and crushed him against the sand bin, he was not guilty of contributory negligence in trying to escape in the confusion by running in the wrong direction.

7. ———: ———. And where it was the duty of the motorman to take the controller handle off its socket before leaving his car and he did so, but laid it on the front of the car so that the foreman was able to get it and start the car, he was not guilty of contributory negligence in failing to carry the handle with him.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

Affirmed.

*Boyle, Priest & Lehmann, Crawley & Jamison* and *John T. Gose* for appellant.

(1) The refusal of defendant's instruction in the nature of a demurrer offered at the close of plaintiff's evidence was error. He who relies upon the absence of the relation of fellow-servants, carries the burden of establishing its non-existence. Shaw v. Construction Co., 77 S. W. 96; Blessing v. Railway, 77 Mo. 410; Sheehan v. Prosser, 55 Mo. App. 569. Where the essential facts are undisputed, the question whether one is a fellow-servant with another who caused his injury is a question of law. McGowan v. Railway, 61 Mo. 502. (2) These duties which the law declares are personal to the master and which he cannot delegate so as to relieve himself of responsibility for the manner in which they are performed are such as regard the safety of his premises, the suitableness of the tools, implements, machinery or material he procures or employs, and the servants he engages or makes use of. Cooley on Torts (2 Ed.), 647-667; Mechem on Agency, secs. 657-667; Brothers v. Carter, 52 Mo. 373; Dowling v. Allen, 74 Mo. 13; Bushly v. Railroad, 107 N. Y. 374;

Parker v. Railway, 109 Mo. 362, 19 S. W. 1119; Schaub
v. Railroad, 106 Mo. 74, 16 S. W. 924. (3) A vice-
principal, then, is one who stands in the master's stead
or one to whom the master entrusts the performance of
these personal duties. Hawk v. Lumber Co., 166 Mo.
121, 65 S. W. 1022; Dowling v. Allen, 74 Mo. 13;
Gormly v. Iron Works, 61 Mo. 492; Railroad v. Fort,
17 Wall. (U. S.) 553; Ryan v. Bogaley, 50 Mich. 179;
Railroad v. May, 108 Ill. 388; Mutton v. Steamship Co.,
78 Penn. 25; Corcoran v. Halbrook, 59 N. Y. 517;
Mitchell v. Robinson, 80 Ind. 281; Bailey on Master's
Liability for Injuries to Servant, 329; Crispin v. Bab-
bitt, 81 N. Y. 522. (4) It makes no difference that one
be a servant of superior authority who gave orders
unless that authority and superiority extended to the
duties which were personal to the master so as to make
this superior servant the *alter ego* of the master. Mar-
shall v. Schricker, 63 Mo. 563; Laughlin v. Railroad,
105 N. Y. 159; Hussey v. Coger, 112 N. Y. 614; Lan-
ing v. Railroad, 49 N. Y. 521; Kenney v. Shaw, 133
Mass. 501; Keystone Bridge Co. v. Newberry, 96 Penn.
St. 246; Beaulieu v. Portland Co., 48 Mo. 295; Hath v.
Peters, 55 Wis. 405; Cooley on Torts (2 Ed.), 665.
(5) The one of whose negligence another complains
must be a vice-principal not only in respect to certain
duties at certain times, but must be also a vice-princi-
pal in respect to the particular act which results in
the injury. He must be a vice-principal not only in
rank but also the character of the particular act must
stamp him a vice-principal in fact. As was said by
GANTT, J., in Bane v. Irwin, 173 Mo. 317: "We agree
with counsel for defendant, 'It is the act, and not the
rank, of vice-principal which determines whether two
employees are fellow-servants.' " In Miller v. Rail-
road, 109 Mo. 356, it was said that one may at the same
time be a fellow-servant and an agent or representative
of the master. The New York court, in Crispin v. Bab-

bitt, thus clearly states the doctrine of dual capacity: "If a superior servant, who as to some duties represents the master, in doing a servant's work injures another servant, the master is not liable." "We regard the dual capacity doctrine" as "firmly and irrevocably fixed by law" in this State. Grattis v. Railroad, 153 Mo. 394, 55 S. W. 108; Moon v. Railroad, 85 Mo. 596; Lee v. D. B. & I. Works, 62 Mo. 565; Harper v. Railroad, 47 Mo. 580; Fogarty v. St. L. Transfer Co., 79 S. S. 667. (6) Another reason why defendant's demurrer should have been sustained is found in the plaintiff's admission of the violation of a rule of the company, that required a motorman who left his car to take his motor handle with him. It is well established that a master may make rules for the regulation of his employees, and if one is injured as a result of the violation of such rules, the master is not liable. Where the master makes and promulgates rules for the safety of the servant, the former is not liable for injuries resulting to the servant, which their observance would have prevented. Francis v. Railroad, 110 Mo. 387, 19 S. W. 935; Texas Co. v. Fields, 74 S. W. 930; Luebke v. Railroad, 63 Wis. 91; Railroad v. Langdon, 92 Pa. St. 21; Darracatt v. Railroad, 83 Va. 288; Prather v. Railroad, 80 Ga. 427; Railroad v. Long, 118 Ind. 579.

*James M. Sutherland* and *Ernest E. Wood* for respondent.

The evidence in this case clearly showed that Mr. Dring was a vice-principal of the defendant, and not a fellow-servant with the plaintiff, and, if that is the case, the company is certainly liable for his negligent acts in the discharge of the company's business. Carter v. Baldwin, 81 S. W. 207; Gormly v. Iron Works, 61 Mo. 492; Moore v. Railroad, 85 Mo. 588, considered and held not to be the law, in view of the later case of Dayharsh v. Railroad, 103

Mo. 570, 15 S. W. 554; Hutson v. Railroad, 50 Mo. App. 300; McDermott v. Railroad, 87 Mo. 285; Dutzi v. Geisel, 23 Mo. App. 676; Herriman v. Railroad, 27 Mo. App. 435; Dowling v. Allen, 74 Mo. 13; Clowers v. Railroad, 21 Mo. App. 213; Stephens v. Railroad, 96 Mo. 207, 9 S. W. 589; Schroeder v. Railroad, 108 Mo. 322, 18 S. W. 1094; Hutson v. Railroad, 50 Mo. App. 300; Cox v. Syenite Granite Co., 39 Mo. App. 424; Hall v. St. Joseph Water Co., 48 Mo. App. 356; Glover v. Kansas City Bolt and Nut Co., 153 Mo. 327, 55 S. W. 88; Russ v. Railway, 112 Mo. 45, 20 S. W. 472; Miller v. Railway, 109 Mo. 356, 19 S. W. 58; Grattis v. Railway, 153 Mo. 380, 55 S. W. 108; Foster v. Rey, 115 Mo. 165, 21 S. W. 916; Donahoe v. Kansas City, 136 Mo. 657, 38 S. W. 571; Bane v. Irwin, 172 Mo. 317, 72 S. W. 522; Haworth v. Railway, 94 Mo. App. 215, 68 S. W. 111; Strode v. Conkey, 78 S. W. 678.

GOODE, J.—Plaintiff was badly hurt by being run against by one of the defendant's trolley cars. The accident occurred the morning of November 28, 1903. Plaintiff was one of the defendant's motormen and on that morning was ordered by a foreman named Dring to take a car out of the carsheds at Delmar and De-Balaviere avenues. Those sheds are the division head-quarters for five or six lines of street cars operated by the Transit Company; among them the Olive street, the Delmar avenue and the Page avenue lines. Several hundred cars go out of the sheds daily on the different lines. The particular car which Bien was ordered to take out that morning was new, and much larger than those theretofore used by the defendant company. In obedience to the direction of Dring, Bien started out of the carsheds with the car, but stopped after passing outside, a car's length or so from a structure called the sand shed, to get some sand for use on the trip, as was his duty. It appears that Dring had ordered him to stop when he did in order to put a signboard on

the car. At any rate he put the signboard on and then proceeded to get sand from the bin to put in the sand-boxes of the car. The car moved out of the carsheds on the south track, which ran within three inches of the northeast corner of the sandbin, curving thence to the south and passing the eastern corner of the bin only a foot or less from it. Bien had taken one bucket of sand to the car and had stooped down outside the bin and between it and the track, to fill another bucket, when Dring got on the standing car, and, in order to get it out of the way of another car which was in the rear, undertook to run it out of the shed himself. He started the car forward suddenly, without giving any warning, and crushed Bien against the side of the sand-bin. Dring knew at the time that Bien was getting sand and if he had looked he could have seen him thirty or forty feet in advance of the car.

The main defense in the case is that Dring was a fellow-servant of Bien. This is contested by respondent's counsel, who insist that he was a foreman or vice-principal. The regular division superintendent about the sheds was one Myers; and it is the contention of the Transit Company that Dring had no authority over the men working about those yards, except to tell the motormen and conductors what cars to take out and when to take them. Another defense is that Bien, in obedience to a rule of the company, should have taken with him, when he went for the sand, his motor handle by which the motion of the car is controlled; that if this had been done the car could not have been started; and, therefore, Bien's own negligence contributed to the accident. On this point it is proper to state some testimony: The chutes through which sand was let from the sand sheds into the buckets were opened by the use of the ordinary motor handle with which motormen operate their cars; that is to say, the device for taking out sand was constructed in such a manner that it could be opened by this motor handle. When Bien went

for sand on this occasion he took with him the motor handle of the new car, thinking he could open a chute with it; but that motor handle was constructed differently from those on other cars, and did not fit the chutes. So Bien carried it back to the car it belonged to and laid it on the motor box in the front of the car; then got an ordinary motor handle and was getting sand with it when hurt. There was testimony that the men about those sheds and yards obeyed all the orders given by Dring in the absence of Myers. Unquestionably negligence on the part of Dring was conclusively shown, and the defendant is liable unless exonerated by Dring's standing in the relation of fellow-servant to the respondent.

Two principal questions are pressed for solution on the appeal. First, as stated above, whether Bien and Dring were fellow-servants, or the latter a vice-principal; second, if he was a vice-principal in the performance of his proper duty, whether he became a fellow-servant of Bien in undertaking to run the latter's car out of the way of the car in the rear, for the reason that the act of operating the car was not one of the duties entrusted to him by the Transit Company. Dring's chief, if not his sole, duty was to regulate the trips of the various crews that went out from the Delmar and DeBalaviere sheds. He assigned crews to the different cars and directed them as to the times of their runs. The members of the crews who testified said they received their orders from him, but in most instances limited the statement by saying they meant orders in regard to taking out cars. Dring had control of them to that extent, at least, and laid them off from work occasionally for infractions of the company's rules or disobedience of orders. What other work besides regulating trips and assigning crews to make them, was performed about that focus of the Transit Company's business, does not appear in evidence; but it does fairly

appear that Dring's authority was principally, if not exclusively, over the car operatives.

Judicial efforts to find a criterion of general application in determining when one employee so far represents the employer that he is a vice-principal and the employer responsible for his negligence resulting in injury to a coemployee, have yielded one of the conspicuous failures of latter-day jurisprudence. The confusion in the cases appears to have arisen from biases in favor of or against the doctrine of *respondeat superior*. Many judges have inclined to restrict the operation of that doctrine by enlarging the scope of the fellow-servant rule which is an exception to it, and narrowing the scope of the exception to the latter rule based on the status of vice-principalship. Other judges have shown the opposite tendency. Both doctrines, *respondeat superior* and fellow-servant, are measures of expediency and can not be reasoned into harmony with each other or perhaps with ideal justice. The law is never free from rules imposing extraordinary responsibilities on particular classes; as witnesses, common carriers, innkeepers, guardians, trustees and the like. The importance of compelling such parties to do all in their power to prevent mischief or loss leads to holding them responsible often for mischief or loss which it was out of their power to prevent. It is obvious that rules of this kind are assailable as productive of injustice, and to temper their rigor, exceptions and qualifications are introduced, and occasionally these are inconsistent in principle with the main rule. The doctrines of *respondeat superior* and coservice are examples of this. One may hold the opinion that the rule requiring masters to answer for the default of servants is accorded too great a sphere at present, constituting, as administered, an unreasonable extension of the principles of the law of agency, without thinking that it can be restricted logically by withholding it as a remedy from fellow-servants or any

particular group of persons. The incongruity of this exception and its apparent injustice in the present state of industrial affairs, when so much separate supervision is necessary, have resulted in broadening the conception of vice-principalship and making masters answerable for injuries to employees by the negligence of other employees who formerly would have been classed as fellow-servants, but are now regarded as representatives of the masters. This doctrine of vice-principalship has entrenched greatly on the defense of coservice; but the principles the courts have enunciated for ascertaining in concrete instances, whether a negligent employee stood in the relation of vice-principal or fellow-servant to another employee, are hopelessly discordant; and it is best, in disposing of the question in a given case, to rely exclusively on a precedent, if an apposite and authoritative one can be found. Counsel in the present appeal have briefed and argued the subject very well, both on principle and authority, and appellant's counsel insist we ought to decide it on theoretical grounds. But fortunately we are relieved of that difficult task. There have been decisions by the appellate courts of this State in cases where the facts were like those before us and which, therefore, are controlling. The fundamental principle and one generally accepted is that for an employee to be held a vice-principal, he must have represented the master in performing the act relied on as a cause of action against the master. It seems to be the doctrine of the English courts that, however high the grade of the servant, this representative character is lacking unless he is charged with duties for whose proper performance the law refuses to relieve the master of responsibility even when he deputes them to an employee. Wilson v. Merry, L. R., 1 H. L., s. c. App. 326. And the doctrine of all courts is that no matter how low the grade of a servant, if he has such duties, as to them he represents the master and the latter is responsible for his negligence

in discharging them. Appellant's counsel say this is the true doctrine and the only standard of the responsibility of a master to a servant for injury by the fault of another servant. No list of these non-delegable duties has been made which is universally accepted; but among them are agreed to be furnishing servants a safe working place, tools and appliances, and good rules; and, generally, using care to surround them with conditions of reasonable safety while at work. No doubt, when a master intrusts an employee with the task of seeing to those matters, the employee enjoys the status of vice-principal and representative of the master; because, as said, the law will not permit the latter to escape responsibility for the performance of such duties, and, therefore, imputes a representative character to any subordinate charged with them. In this country the status of vice-principalship has been enlarged by giving the representative character to a subordinate because of the extent of his authority. Sometimes this result is attained by regarding the supervision of work and the conduct of workmen as a non-delegable duty; a theory which the English and some American courts reject. Wilson v. Merry, supra. Those tribunals hold the master responsible only when it may be said an agreement which he is supposed to have made with the injured servant to take reasonable precautions for the latter's safety, was broken; and such an agreement is not broken by the neglect of a foreman or manager, but only by carelessness on the part of the master in selecting the manager. In other jurisdictions the scope of the doctrine of vice-principalship has been extended by regarding the power of management and control vested in a subordinate as often so great that, in reason, he ought to be held to represent the proprietor. It is at least questionable if an employee may not be a vice-principal by virtue of his extensive authority even when it is plain that he is charged with no non-delegable duty. 2 Labatt, Master

and Servant, sec. 555. Another test of whether the fellow-servant relationship exists is the closeness of the association of given employees in their work and the opportunity they have to observe and influence each other and report delinquencies to a common superior. Still another test is the so-called departmental one, by which servants engaged in the same department or branch of service are regarded as fellow-servants, while those in different departments are not. This criterion has been rejected recently in Missouri. Grattis v. Railroad, 153 Mo. 380, 55 S. W. 108. The other tests have been recognized and adopted in different adjudications on the subject. In Bane v. Irwin, 172 Mo. 306, 72 S. W. 522, the character of the act was spoken of as the determinative factor on the issue of fellow-servant or vice-principal. The remark was made in a connection which shows the court meant the act must have been such that the law will treat it as the master's; but whether because it was in execution of a non-delegable duty or because the servant who did it was clothed with the master's full authority as to the duty in which the act occurred, is not clear. In Missouri the power of superintendence and control has often been taken as the true criterion, though it is rejected in various jurisdictions. The decision for the plaintiff in the case just cited was put on the ground that the employee whose negligence hurt him had authority to direct and control him. This test of the master's responsibility is expounded on principle and authority, and the Missouri cases cited, in Miller v. Railroad, 109 Mo. 530, 19 S. W. 58. It strikes us as a reasonable test and well suited to work out just results under the complicated industrial system of these days, when enterprises have many distinct departments and headquarters under separate managers, and the proprietors of them rarely give orders to or personally supervise the employees. In Hawk v. Lumber Co., 166 Mo. 121, 65 S. W. 1022, the criterion of associated duties and

Bien v. St. Louis Transit Co.

opportunity to report to a common superior was approved and cases cited in support of the ruling.

To confine our investigation to the facts of this case, we propound these questions as covering the field of inquiry necessary to be gone over to arrive at a correct judgment: Were Bien and Dring so closely associated in their work that they were able to observe and influence each other and report a delinquency which threatened one of them to a common superior for redress? Did Dring have authority to superintend and control Bien in the work that fell to the latter? Was there evidence for the jury tending to prove the particular negligent act of Dring which injured Bien was performed as a vice-principal and not as a fellow-servant?

Dring was foreman over five hundred men, including Bien, and had authority to order, regulate and control those men in running cars; the only duty that fell to them about that center of the Transit Company's business and, so far as is shown, the only duty they performed at all. The case, as to this point, falls within the decision of Miller v. Railroad, supra, wherein it was declared that if a master gives a person power to superintend and direct men at work, such person is as to those men a vice-principal, whatever his designation or title may be. The same authority and analogous ones answer our second question; for it has never been held, to our knowledge, that a workman under a superintendent or foreman of a great headquarters, and bound to obey the latter's orders, was so closely associated with the superintendent that the two ought to be classed as fellow-servants. Bien's work gave him no chance to influence the manner in which Dring superintended, and it would be preposterous to say that a common workman could report the fault of his superintendent, when the latter was in authority over hundreds of men, with such hope of favorable audience as to insure protection against being hurt by the su-

perintendent's neglect. The very latest decision that touches the question is decisive that Dring was as to Bien a vice-principal. We refer to Bane v. Irwin, supra. Bane worked in a lead mine in which Thomas Gibbs was mine boss or foreman, but under Sennett Rankin, general ground foreman. Three shots, or blasts, had been placed, and Bane, by the direction of Gibbs, fired the left-hand shot, Gibbs saying he would fire the right-hand one himself. Gibbs next placed his lamp against the fuse of the central shot and he and Bane hurried out of danger. Two shots went off; Gibbs then told Bane he had not lighted the middle one and ordered Bane to go back and light it. Bane went back in obedience to the order and just as he had reached the shot, it exploded, blowing out his eyes. The testimony as to the extent of Gibbs' authority shows it was exactly the same as Dring's; that is, he controlled the men in the shaft and showed them where to work. The contention was put forward in that case that Gibbs was a fellow-servant of Bane and not a vice-principal. On this point the Supreme Court said:

"Gibbs was not a fellow-servant with plaintiff. The evidence shows he had control of the plaintiff's work, to direct how, when and where he should work. The fact that they both had a general superintendent over them in the person of Mr. Rankin did not make them fellow-servants. The foreman in directing plaintiff's work, what he was to do, where he was to do it and how he was to do it, was performing the master's duty *pro hac vice,* and was a vice principal."

In that case as in this one, there was a superintendent in authority over the negligent foreman.

We cite other apposite decisions in support of the proposition that Dring was a vice principal. Dayharsh v. Railroad, 103 Mo. 575, 15 S. W. 554; Miller v. Railroad, 109 Mo. 357, 19 S. W. 58; Russ v. Railroad, 112 Mo. 45, 20 S. W. 472; Donahoe v. Kansas City, 136 Mo. 670, 38 S. W. 571.

The third question is next to be answered. If Dring was ordinarily a vice-principal as we have held, is there evidence to show he lost that character and became a fellow-servant with Bien when he undertook to run the latter's car out of the way of the one in the rear? In other words, was there evidence to show said act was performed as a fellow-servant? The so-called dual capacity doctrine, according to which an employee may be a vice-principal while performing one portion of his duties and a fellow-servant while performing another portion, obtains in Missouri. This was decided recently in Fogarty v. Transfer Co., infra. If Dring was charged with the performance of any duties except superintending, assigning different crews to the cars and ordering them on trips, the fact is not in proof. The act of Dring which resulted in Bien's injury was not an act which it was Dring's duty manually to perform, but one which it was his duty to order. That is to say, it fell within the scope of his superintendency. The exact question then is, did performance of it by his own hand make him a fellow-servant? If it is to have a logical nature, the "dual capacity" doctrine would seem to require that an employee who is regarded as both a fellow-servant and a vice-principal, should have duties assigned to him in each role. The doctrine ought not to take effect on the bare incident of a superintendent, *sua sponte* and momentarily, putting his hand to some chore. We think that is the spirit of the doctrine of dual capacity, but do not decide the proposition, as direct precedents determine the character in which Dring performed his mischievous act. In this connection we are cited by the appellant's counsel to the Bane case. But it is distinctly stated in that case that Gibbs, the foreman, was accustomed at times to do the work of a servant. Besides, the remark about the defendant not being liable if Gibbs had lighted the last fuse instead of ordering Bane to do it, was obiter and perhaps inconsistent with other cases including the later

one of Fogarty v. Transfer Co. If Dring, instead of running the car out of the way himself, contrary to his duty and habit, had ordered another man to do it, the company's liability would be certain. Is it any less certain because Dring ran it; it being, as stated, a duty which properly he should have ordered instead of performing? Unquestionably not, according to decisions in Missouri on identical facts. Dayharsh v. Railroad, supra; Russ v. Id., supra; Foster v. Reynolds, 115 Mo. 165, 21 S. W. 916; Fogarty v. Transfer Co., 79 S. W. 669; Hutson v. Railroad, 50 Mo. App. 300; Haworth v. Railroad, 94 Mo. App. 215, 68 S. W. 111; Donnelly v. Railroad, 103 Mo. App. 349; Strode v. Konkey, 78 S. W. 679. The Fogarty case is really decisive of this one as to the point in hand and is the latest expression of the Supreme Court bearing on it: Fogarty and Edwards were employees of the St. Louis Transfer Company; Fogarty being a teamster and Edwards a superintendent of the defendant's teamsters in East St. Louis. Fogarty was attempting to back his team immediately under the eye of Edwards, who was giving orders. Not satisfied with Fogarty's manner of handling the team, Edwards jumped on the wagon, took the reins and in attempting to back, brought on an accident in which Fogarty was hurt. The point was made that Edwards became a fellow-servant and ceased to be vice-principal when he undertook to handle the team. It was ruled to be a question for the jury whether he acted as a vice-principal or a fellow-servant in the performance of the act. In the Hutson case, supra, a section foreman while wielding a pick in an effort to help move a railroad tie, struck one of his men. He was held to be still a vice-principal and that there was no logical difference between ordering the act to be done and doing it himself. In Russ v. Railroad, supra, a section foreman placed a waterkeg on the front of a handcar and assisted his men to propel the car. The keg fell off in front, the car ran against it and was

thrown off the track, hurting the plaintiff. It was held that the foreman was not a fellow-servant by virtue of the work he was doing and, therefore, the railroad company was liable for the result of his negligence. Certain cases are cited in the opinion and it is said that in most of them the negligent act of the agent or superintendent consisted in giving some order, but that the principle of liability was not confined to the negligent order; that liability might arise from the negligent performance of work done by a foreman or superintendent. In Donnelly v. Mining Co., supra, the foreman of a mine rolled a rock on the plaintiff, and it was asserted that, by virtue of the foreman's dual capacity, he was acting as a fellow-servant when he moved the rock, inasmuch as he was then taking part in manual labor. This argument was rejected. In the Haworth case, supra, the superintendent of a gang of workmen was assisting to operate a handcar, and while he was doing so Haworth was injured by the sudden stopping of the car. It was ruled in that case that as it was Dyson's duty to superintend the working of the car, he did not divest himself of responsibility by lending a hand.

Our conclusion from the precedents we have cited is that Bien's injury through Dring's negligence is one for which the defendant company must answer, as Dring was found to have caused the injury in undertaking to do something which he might have ordered done and which was clearly within the sphere of his duty as superintendent. The court submitted the question of the capacity in which Dring acted to the jury; and this was in accordance with the Fogarty decision. The jury were told that if they believed from the evidence Dring was employed as foreman of the carsheds and by virtue of his employment and position had immediate control and direction of the plaintiff and others engaged in taking out cars from the sheds, and had authority to direct and control plaintiff's work, Dring was a vice principal and not a fellow-servant. A

counter instruction asked by the defendant was largely of an abstract character and did not specify facts which, if found, would cast Dring into the position of a fellow-servant. In fact, under the decisions and in view of the harmony of the testmony, it is somewhat difficult to see why the question of Dring's capacity could not have been decided by the court.

Whether Bien contributed to his injury by a lack of ordinary care was submitted to the jury. The appellant contends the testimony showed beyond doubt that he was guilty of contributory negligence and, therefore, ought to have been nonsuited. The facts insisted on to prove his negligence are that when the car was nearly on him, instead of running to the west out of the way, he rushed toward the east and was caught. To hold that such a mistake was negligence to bar recovery in view of the fact that Dring ran the car on him while he was stooping to get sand and, of course, startled him, would be wrong. It is further said that according to the rule of the company Bien should have taken the controller handle with him when he went after sand, and was guilty of negligence in leaving it on the car so that the car could be moved with it. We have already explained Bien's reason for doing so. He took it in the first place, could not use it, brought it back and laid it in the front of the car. That negligence, if it was such, was connected with the accident in a very remote way. Dring picked up the controller handle, started the car with it and ran against Bien when the latter was in plain sight. Bien swore that all the rule of the company required of him was that he should take the controller handle off its socket and lay it on the controller or elsewhere, and did not impose on him the duty of carrying it in his hand wherever he went. The evidence of any contributory negligence on Bien's part is slender at best and was for the jury's consideration.

The judgment is affirmed. All concur.