RAY MILLER, By next friend, Respondent, v. TOWNLEY MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted June 1, 1914. Opinion Filed June 20, 1914.

1. RAILROADS: Tram Railroads: Equipment of Engines: Negligence. *Held,* by REYNOLDS, P. J., that, in view of the fact that Sec. 3170, R. S. 1909, expressly exempts tram railroads employed in the hauling of logs from the provisions of Secs. 3165 to 3172, inclusive, which require railroad engines and cars to be equipped with power and air brakes, automatic couplers and other safety devices, the failure to equip the engines of such a tram railroad with such devices is not negligence *per se;* but this provision does not relieve the operator of such a railroad from so equipping its engines that they can be operated with safety.

2. ———: ———: ———: Injury to Servant: Proximate Cause. In an action for injuries sustained by a fireman and brakeman of a tram railroad log train, caused by the movement of one of the cars, which was coupled to the engine, while he was endeavoring to uncouple it from another car, *held* by REYNOLDS, P. J., that the evidence did not warrant a recovery on the ground that the engine was not equipped with

brakes, since it was not shown that the injury was due to the fact that the engine was not so equipped.

3. **EVIDENCE: Conjecture: Probative Force.** *Held*, by REYNOLDS, P. J., that a verdict must rest upon facts, and not upon supposition, guess, or conjecture.

4. **RAILROADS: Tram Railroads: Injury to Servant: Assumption of Risk.** In an action for injuries sustained by a fireman and brakeman of a tram railroad log train, caused by the movement of one of the cars, which was coupled to the engine, while he was endeavoring to uncouple it from another car, *held* by REYNOLDS, P. J., that plaintiff could not recover on the theory that defendant was negligent in failing to equip the engine with brakes, since plaintiff had worked about the engine four or five weeks before the accident and knew that it had no brakes and exactly how it and the train were operated, and hence assumed the risk of injury arising from the failure to equip it with brakes.

5. ———: **Fellow Servant Act: Applicability to Tram Railroads.** *Held*, by REYNOLDS, P. J., that Sec. 5434, R. S. 1909, abolishing the common-law fellow-servant rule, does not apply to a tram railroad used by a manufacturing company in transporting logs to its saw mill, since that section, in terms, is confined to railroad corporations owning or operating a railroad.

6. **MASTER AND SERVANT: Tram Railroad: Injury to Servant: Instructions.** In an action for injuries sustained by a fireman and brakeman of a tram railroad log train, caused by the movement of one of the cars, which was coupled to the engine, while he was endeavoring to uncouple it from another car, *held* by REYNOLDS, P. J., that an instruction given for plaintiff, that if the jury found that plaintiff's injury was caused by "the negligence of the engineer of said train to hold, guard and protect said train and keep the same from moving backwards while plaintiff was between the cars therof to uncouple the rear car of said train," was erroneous, for the reason that it is so worded as to make the engineer a guarantor of plaintiff's safety, when, even assuming he was a vice principal, defendant could only be charged with his negligence in failing to use ordinary care and caution in attempting to hold, guard and protect the train, etc.

7. **RAILROADS: Tram Railroads: Injury to Servant: Fellow Servant: Dual Capacity Doctrine.** In an action for injuries sustained by a fireman and brakeman of a tram railroad log train, where it was shown that the engineer had charge of the locomotive and train and that the master had clothed him with authority to order and direct the movement of plaintiff, *held* by NORTONI, J., with whom ALLEN, J., concurs, that although

Miller v. Manufacturing Co.

the engineer and plaintiff were fellow servants, generally speaking, yet the engineer, under the dual capacity doctrine, was a vice principal when giving orders and directions, and the employer was liable if it failed to exercise ordinary care to furnish plaintiff with a reasonably safe place to work while between the cars, pursuant to the engineer's orders, uncoupling two of the cars, by causing or permitting the locomotive and cars to back against plaintiff, whereby he sustained his injuries; and there being evidence that the engineer did not exercise ordinary care in this respect, the question of defendant's negligence was for the jury.

*Held*, by REYNOLDS, P. J., dissenting, that in view of the fact that the engineer had no power concerning the employment or discharge of plaintiff, and that they together constituted the crew operating the train, they were fellow servants in operating it (Sec. 5434, R. S. 1909, not being applicable), and hence the employer was not liable for the negligence of the engineer; the order given by the engineer to plaintiff being a mere direction given in the course of his ordinary employment.

8. ———: ———: ———: Instructions. In an action for injuries sustained by a fireman and brakeman of a tram railroad log train, caused by the movement of one of the cars, which was coupled to the engine, while he was endeavoring to uncouple it from another car, *held* by NORTONI, J., with whom ALLEN, J., concurs, that the instructions given for plaintiff contained reversible error.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

REVERSED AND REMANDED.

*J. L. Fort* and *T. R. R. Ely* for appellant.

*Bradley & McKay* for respondent.

REYNOLDS, P. J.—While plaintiff here, a minor eighteen years of age, was acting as fireman and brakeman on a log train, consisting of an engine and three cars, engaged in hauling logs from the logging camp to sawmills operated by defendant, he, under the direction of the engineer to uncouple the rear car, went to the rear of the train to uncouple that car, and was

engaged in uncoupling it when in some unexplained manner it is claimed that the forward cars were put in motion and the car in front of the rear car pushed down on to the rear car, and plaintiff's elbow caught between the ends of logs projecting over the front of the rear car and the bumper or logs on the car immediately in front of it, crushing his elbow. Defendant is a manufacturing company engaged in sawmilling and operates a logging or tramroad, as it is usually called, from its logging camps to its mills. The cars used were mere frames, not even platform cars, and the logs loaded on them being longer than the body or framework of the car, projected over and beyond the ends some three or four feet, the cars being coupled by chains of various lengths, depending upon the length the logs projected over the cars. There were no brakes on the engine or cars or safety appliances of any kind used in connection with the operation of this logging train.

The negligence assigned is, first, the failure of defendant to equip its engine with brakes and safety appliances; or, second, the failure of the engineer under whose direction it is alleged plaintiff was working, to hold, guard and protect the train so that it would not move backward while plaintiff was uncoupling the cars; or, third, that defendant had stopped the train on a down grade; or, fourth, that defendant had loaded the train with logs much longer than the cars, it being claimed that "all or any" of these were acts of negligence resulting in injury to plaintiff.

Taking up these assignments of negligence, and considering the first, there is this to be said: Our statute (Revised Statutes 1909, sec. 3170), referring to sections 3165 to 3172 inclusive, requiring the use of power brakes and other safety appliances, automatic couplers, and the like, on the engine, and at least seventy-five per cent of the cars composing the train, expressly provides that the requirements of these sec-

tions shall not apply to tram railroads employed in the transportation of logs. That is exactly the kind of road this company was operating at the time. Hence, the failure to equip the engine with power brakes and other safety appliances, is not, in itself, actionable negligence, nor ground for recovery. But this provision of the statute does not exempt any one operating a locomotive engine for the movement of any kind of a train from having such locomotive so equipped that it can be operated with safety. If the absence of brakes from this engine was a contributing cause to this accident, absent other elements, such as assumption of risk, the employer is liable.

That the absence of brakes from this engine was not a contributing cause, seems to me clear from the evidence.

Plaintiff testifies that there were three cars in this train; that while he was between the two rear cars, the one in front of the rear car moved down and caught his elbow between its bumper and the end of a log on the rear car. That is, substantially, all that plaintiff tells of how the accident occurred. His theory or supposition is, that the engine backed. He does not know or pretend that this occurred; he supposes it did; does not pretend to know what caused the movement; does not pretend to say that the engine moved at all. When he went in between the cars the slack was out of the chain coupling these two cars; whether that was so as between the first and second cars, is not in evidence. The first car was attached to the engine by an ordinary coupler. The engine and first two cars were on a slightly down grade, the rear car was on a level. So that plaintiff's own testimony not even tending to prove that the engine moved or backed, the jury were, by his testimony, left to mere guesswork and conjecture.

The only testimony as to the engine and its movements was given by the engineer. He testified that

they "had no brakes, but I can stop the engine any time I wish, and I can stop it about any where I am trying to, with the reverse lever and steam, . . . was slowing down, when plaintiff jumped off of the engine, . . . before I stopped, and I was going very slow. I didn't see what he did after he got off of the engine. I stopped at the usual stopping place and held the engine perfectly still and ready to back up in order to allow him (plaintiff) to uncouple the car, and I didn't have any knowledge or anything of him, so I looked around at the back end and I saw him (plaintiff) standing out right opposite the back end of the first car outside of the track holding his arm in one hand, I think he had his right hand holding his left arm. I see there was something the matter with him—or wrong, as I hadn't heard nothing from him, so I got out and went back and he said that he had hurt his arm, but didn't say how he hurt it." The engineer repeated that he stopped the train—"stopped it still and held it there;" that his engine was in such condition and so equipped that he could hold and that he did hold it; that neither the train nor car moved backwards after he stopped the train; "it didn't move back a bit for I held it right there. It was a stationary coupling and I know it could not have moved over an inch at the least."

It is true that the testimony of the engineer and of plaintiff differs as to the fact that the train moved. But there is no contradiction of the testimony of the engineer that the engine did not move, and that he could stop and hold it and the train in place with the appliances with which the engine was equipped, namely, steam, sand and reverse lever.

Counsel for plaintiff himself asked the engineer if he did not know, as a matter of fact, that if there had been three cars in this train (as plaintiff contended and so testified) that the second car could have moved down on this boy without the engine moving. To

which the engineer answered, "yes, sir." That being so, and there is no contradiction of this, it appears entirely clear that the absence of brakes from the engine had nothing whatever to do with this accident. It follows that this lack of brakes is not to be chargeable to defendant. If the jury based its verdict on the supposition that the absence of brakes from the engine contributed, then it acted on mere supposition and not on facts.

Furthermore, plaintiff had been at this work about and with this engine, some four or five weeks before the accident and knew that the engine had no brakes; knew exactly how it and the train operated. It appears that the engine was not a regular railroad engine but the kind used in operating what is known as a "dinkey train." So plaintiff assumed the risk of working about it.

If then, the engine did move, it was not for lack of brakes to hold it, but the fault of the engineer in not properly securing it with the means at hand which the employer had furnished and which the engineer testifies were ample to enable him to hold the engine and train, and this was the act of a fellow workman, as we shall see, for which this defendant is not liable.

The other acts of negligence assigned, with the exception of that relating to the loading of the logs, are all acts of the engineer, under whose direction it is alleged plaintiff was working, in handling the train and in ordering him to uncouple the rear car while the train was stopped on a grade or incline.

Beyond doubt, in the operation of this train, the engineer and the brakeman and fireman, both of which latter positions plaintiff filled, were fellow servants. As this tramroad was not owned nor operated by a railroad corporation, the provisions of section 5434, Revised Statutes 1909, abolishing the rule of fellow servants, do not apply. That section, in terms, is confined to "every railroad corporation owning or oper-

ating a railroad." So here the doctrine of nonliability of the employer for injuries sustained through the negligence of a fellow workman, must govern.

Defining who are or are not fellow servants, our Supreme Court has held in several cases that the conductor, engineer, brakeman and fireman are fellow servants. [See McGowan v. St. Louis & I. Mt. R. R. Co., 61 Mo. 528; Grattis v. Kansas City, Pittsburg & Gulf R. R. Co., 153 Mo. 380, l. c. 395, and following, 55 S. W. 108.]

In Smith v. St. Louis & San Francisco Ry. Co., 151 Mo. 391, 52 S. W. 372, it was held that the "hostler" in charge of the roundhouse in which locomotives were kept and overhaulted, while having authority to direct the men around the roundhouse as to what they should do, but having no authority to hire or discharge them, was a fellow servant with the wiper, who started the engine contrary to the rule of the company and also with the plaintiff, who was a fireman.

Our court held in Houts v. St. Louis Transit Co., 108 Mo. App. 686, 84 S. W. 161, that the motorman and conductor of a street car were fellow servants and that one could not recover for injuries received as the result of the negligence of the other. This decision was made prior to the amendment which included street cars.

In the case at bar it does not appear that the engineer, who, with this plaintiff, was running this train, had any power whatever as to the employment or discharge of plaintiff as brakeman or fireman. They together constituted the crew who operated the train, and when plaintiff got off in the ordinary course of his employment, the fact that he did so under the direction of the engineer and without special orders, is immaterial. The order of the engineer, if made, and this is controverted, was a mere direction to him in the course of his ordinary employment (Grand Rapids & Indiana Ry. Co. v. Pettit, 27 Ind. App. 120); of no

more significance than if the engineer had blown the
whistle for brakes or to couple or uncouple cars.
[Evans v. Louisville, New Orleans & Texas Ry. Co.,
70 Miss. 527.]

Looking at other decisions outside of our own
State, we find the United States Circuit Court of Ap-
peals for the Sixth Circuit, in Newport News & M. V.
Co. v. Howe, 52 Fed. Rep. 362, holding that the brake-
man who was sent by the conductor from the rear por-
tion of a parted train to signal the forward portion,
of which the engineer was, by the rules of the company,
the conductor, was a fellow servant of the engineer,
and could not recover from the company for an in-
jury caused by the engineer's neglect. That case in
its facts as to the employment of the engineer and of
the plaintiff bears a close resemblance to the case at
bar. See, also, Fenwick v. Illinois Central R. Co., 100
Fed. 247, a decision by the United States Circuit Court
of Appeals for the Fifth Circuit.

In New England Railroad Co. v. Conroy, 175 U. S.
323, the Supreme Court of the United States held that
the negligence of the conductor of a freight train is
the negligence of a fellow servant of the brakeman
on the same train, who was killed by an accident oc-
curring through that negligence.

It is stated in 26 Cyc., p. 1352, par. 4, that al-
though there are a large number of cases holding that
the conductor while in charge of a train is a vice-prin-
cipal as to the engineer, brakeman, fireman or other
employees working on such train, "the contrary rule
now prevails in the Federal courts and in a majority
of the State courts." McGowan v. St. Louis, etc., R.
Co., and Grattis v. Kansas City, etc., R. Co., supra,
are cited as announcing that to be the rule in our State.

It is further said in this same paragraph (sub-
division b): "It has been held in most of the States
where the question has come up for decision that a rail-
road engineer is, where not acting in the performance

of some duty which the master cannot delegate so as to escape the responsibility, a fellow servant of other members of the train crew injured by his negligence, such as the fireman and brakeman." See, also, cases cited in Grand Rapids & Indiana Ry. Co. v. Pettit, supra, l. c. 124 et seq., especially Evans v. Louisville, New Orleans & Texas Ry. Co., supra, where it is said (l. c. 530): "The claim is that the engineer was the superior agent or officer, or person having the right to control or direct the services of the party injured. This is not predicable of the relation between the engineer and brakeman, in the performance of the ordinary duties prescribed for them respectively by the rules of the company, and the nature of the service. As to these the relation of superior and subordinate does not exist, but they are co-equal—co-ordinate co-operators, each with a part to perform, like different members of the human body, each with appropriate functions, some of greater or less honor, it may be, but all necessary co-efficients in the complete whole."

The assignment of negligence in the engineer in stopping the train on a grade and directing plaintiff to uncouple the rear car while the train and cars unequipped with brakes and safety appliances were on the grade or incline, is rather confusing. As before said, there was no obligation on the part of defendant to equip a train of this kind with the safety appliances specified by statute. The evidence, as we have attempted to show, makes it clear that the absence of brakes from the engine had nothing to do with the ability of the engineer to stop and hold it and the train, or with this accident, so that the employer cannot be held liable and the stopping on grade and failure to hold the train and prevent any of the cars from backing while plaintiff was engaged in uncoupling the car, the engineer having the means and appliances to do that, were the acts of a fellow servant.

Furthermore, and as bearing upon this particular assignment of negligence, the instruction given at the instance of plaintiff is fatally defective in that, among other things, it instructed the jury that they should find for plaintiff, if they found that the injury and pain suffered by him were occasioned by "the negligence of the engineer of said train to hold, guard and protect said train and keep the same from moving backward while plaintiff was between the cars thereof to uncouple the rear car of said train." This clause permitting a recovery for the negligence of the engineer is so worded as to make the engineer a guarantor of the safety of plaintiff. All that the engineer could possibly have been charged with, even assuming he was a vice-principal, was negligence in failing to use ordinary care and caution in attempting to hold, guard and protect the train and keep it from moving backward while plaintiff was between the cars and uncoupling the rear car of the train. He, even if vice-principal, was not an insurer of the safety of defendant. If for no other reason than this defect in this instruction, we would be compelled to reverse the judgment.

The assignment of negligence of defendant in loading and permitting the cars to be loaded with logs much longer than the cars, is untenable. There is not a word of testimony to show that the loading was done negligently or that that was not the usual and customary way, and in fact the only way to handle logs on these cars. It is not charged that the logs slipped.

In view of all the facts in the case, I am clearly of the opinion that plaintiff suffered whatever injury he sustained by the acts of a fellow servant and cannot recover.

For these reasons I think that the judgment of the circuit court should be reversed. My learned associates, however, do not concur in this. They believe that there is a question for the jury concerning the

negligence of defendant.   Judge NORTONI, expressing
the view of himself and Judge ALLEN, holds, that,
"Conceding the fact that the engineer and this plain-
tiff, the fireman, were fellow servants, generally
speaking, yet it appears that the engineer was in a
position of authority over the fireman and, indeed,
had charge not only of the locomotive but of the log
train as well.   It was for the fireman to obey such
reasonable orders about the work as the engineer saw
fit to give, and the master clothed the engineer with
authority to order and direct the movements of the
plaintiff, the fireman.   This being true, the dual ca-
pacity doctrine obtains and the engineer is to be re-
garded as a vice-principal when acting in the author-
ity of the master as though giving orders and direc-
tions.   [See Rigsby v. Oil Well Supply Co., 115 Mo.
App. 297, 91 S. W. 460; Bane v. Irwin, 172 Mo. 306,
72 S. W. 522.]

"There is evidence in the case to the effect that
the engineer ordered the fireman to perform the task
on which he was engaged when injured.   This being
true, the law devolved the duty on the engineer to
exercise ordinary care for plaintiff's safety while per-
forming the duty in the matter of rendering him a rea-
sonably safe place in which to work.   There is evi-
dence tending to prove the engineer either permitted
the locomotive and the cars to back or actually moved
them upon plaintiff while he was attending to the
very duty and in the very place assigned him by the
engineer.   This being true, we regard the question of
defendant's negligence as one for the jury as to
whether or not the engineer exercised ordinary care
for the safety of plaintiff at the time.   [See Dayharsh
v. Hannibal, etc., R. Co., 103 Mo. 570, 15 S. W. 554;
Bane v. Irwin, 172 Mo. 306, 72 S. W. 522; Rigsby v.
Oil Well Supply Co., 115 Mo. App. 297, 91 S. W. 460.]

"However, the instructions given for plaintiff are
so obviously erroneous as to require no discussion.

At any rate, the judgment should be reversed and a new trial awarded because of that.''

It is therefore ordered that the judgment be reversed and the cause remanded.