DAYHARSH v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. Negligence: EMPLOYE: FELLOW SERVANT. Where one employe is in charge of a certain part of defendant's railway business, as, in this case, of a roundhouse, the engines there and the men required to care for them, he is not to be regarded as the fellow servant of a laborer working at the same time under his orders, in respect to acts done by the former in pursuance of his authority over the branch of business under his charge.

2. ———: ———: ———. The fact that such "boss" personally acted in a negligent manner, whereby plaintiff was injured, will not relieve the company of liability, where the act was done within the scope of the authority of the "boss" to direct and control as the representative of the master.

3. ———: ———: SAFE PLACE TO WORK. It is a part of the master's duty to use ordinary care to furnish the employe a place to work, reasonably safe, as the nature of the employment permits, and not to expose him to any unknown risks not ordinarily incident to the service.

4. ———: EVIDENCE: PLAINTIFF'S CHILDREN. In an action for personal injuries caused by negligence, it is error to admit evidence of the number and ages of plaintiff's children.

5. **Practice : ERROR.** Error committed on the trial of a cause is presumptively prejudicial; one claiming it to be harmless must affirmatively show it to be so.

*Appeal from Linn Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED AND REMANDED.

THE case proceeds for personal injuries, and the defenses are a general denial and contributory negligence.

Plaintiff was injured while in defendant's employ at its roundhouse, Brookfield, Missouri. He was a laborer under the direction of Mr. Stephens, who was called the night "hostler." The meaning of this term in this case will be readily comprehended, by regarding the locomotive-engines as iron horses and their custody, care, cleaning and management, in and about the roundhouse, as devolving on Mr. Stephens, the "hostler," and the men under his orders for that purpose, from seven P. M. of one day to seven o'clock of the following morning.

Plaintiff's evidence tended to prove that, on the night of the accident, he began work at seven o'clock as usual, coaling and watering the engines till near eleven P. M., after which Mr. Stephens told him to take the scoop and get down in the pit and shovel out the cinders. The pit (or trench) was under the tracks, running into the roundhouse. It received the ashes and cinders from locomotives, and, when filled nearly to the level of the rails, was emptied by shoveling the ashes, etc., out to one side.

In accordance with the order, plaintiff got into the pit, placed his lantern on the rail near him, and began to throw out the ashes with a shovel. It usually took from twenty to thirty minutes to clean out the ash pit. An engine stood close by (defendant's witnesses say some six or seven yards away), on the same track, and

Mr. Stephens was upon the engine. When plaintiff had thus been working for a time, stated by him as "three to five minutes" (and by defendant's witness, Mr. Stephens, as "from five to ten minutes"), this engine started backward toward plaintiff. The tender struck him and severely crushed his ankle, as he was endeavoring to get out of its way. He says he heard no bell or other signal given of its approach; that he had only taken out "three or four scoops" and was reaching for another shovelful when he was hit; that he cried out and "tried to dodge it" but failed, and that the tender and part of the engine ran over him. Plaintiff, consequently, lost his leg below the knee.

The testimony as to whether or not a signal was given by ringing the bell (as the engine moved toward plaintiff) was conflicting. Some of defendant's witnesses said it was. The plaintiff said he heard no signal. One of defendant's employes declared that there were other bells ringing on other engines near by, and that he could not say whether or not the engine bell in question was rung. In the progress of plaintiff's examination, he was allowed (against defendant's objection and exception) to state the number of his children and their ages.

The only instruction given by the court, on the measure of damages, was as follows: "If the jury find for the plaintiff, they should, in estimating his damages, take into consideration the age and situation in life of the plaintiff, his bodily suffering, resulting from the injury received, and loss sustained by reason of the loss of his leg, and the extent to which he is disabled from making a support for himself and family by reason of the injury received, not exceeding $10,000."

The jury found for plaintiff for $5,008.33, and, in due course, defendant filed the usual motions and bill of exceptions, to preserve for review the points hereafter discussed. Other facts that may be material will be mentioned in the opinion of the court.

*Huston & Parrish* for appellant.

(1) The court erred in overruling the appellant's objection to the introduction of any testimony. The only alleged negligence was that of Stephens in and about the manual labor of handling and personally operating the engine. In such manual labor he was a fellow servant. *Moore v. Railroad*, 85 Mo. 588; *Hoke v. Railroad*, 88 Mo. 360; *Marshall v. Schricker*, 63 Mo. 311. (2) The court erred in refusing appellant's demurrer to the evidence at the close of plaintiff's testimony, because no negligence was shown. *Henze v. Railroad*, 71 Mo. 638; *Cathcart v. Railroad*, 19 Mo. App. 113; *Bohan v. Railroad*, 61 Wis. 391; *Klanouski v. Railroad*, 21 Am. & Eng. R. R. Cases (Mich.) 648; *Hughes v. Railroad*, 34 Am. & Eng. R. R. Cases (Texas) 66; *Tully v. Railroad*, 14 Am. & Eng. R. R. Cases (Mass.) 682; *Railroad v. Shearer*, 58 Ala. 672; *Culhane v. Railroad*, 60 N. Y. 134; *Telfer v. Railroad*, 30 N. J. L. 188; *Railroad v. Still*, 19 Ill. 499; *Railroad v. Byam*, 80 Ill. 528. (3) The court erred in overruling appellant's objection to the question asked the plaintiff when on the stand as a witness, as to whether he was married or not, and as to the number and ages of his children. Such testimony was totally inadmissible under any issue and could only be intended to inject an element of sympathy into the case. Such testimony is only admissible in cases proper for smart money. Never where compensation alone is the rule. *Railroad v. Roy*, 1 Am. & Eng. R. R. Cases, 227; *Stephens v. Railroad*, 96 Mo. 207; *Overholt v. Veiths*, 93 Mo. 422; *Roy v. Railroad*, 102 U. S. 451; *Railroad v. Powers*, 74 Ill. 341; *City v. Brennan*, 65 Ill. 160; *Kreutzinger v. Railroad*, 40 N. W. Rep. 657; *Dreiss v. Freidrich*, 57 Texas, 70. (4) The lower court erred in refusing the instructions, numbered 1, 2 and 3, asked by

defendant. *Lee v. Bridge Co.*, 62 Mo. 565 ; *Hoke v. Rail-road*, 88 Mo. 360 ; *Moore v. Railroad*, 85 Mo. 588. ( 5 ) In handling the engines, removing them to and from the trains and stalls as hostler, Stephens was a mere manual laborer, for whose actions in that matter the appellant is not responsible. The court erred in overruling appellant's motion for a new trial. The verdict was excessive, and was not only against the evidence, but was entirely unsupported by the evidence. Authorities, *supra*.

*A. W. Myers* and *Stauber & Crandall* for respondent.

( 1 ) Mike Stephens was superintendent and represented defendant at night, and plaintiff was subject to his orders, hence a vice-principal. *Moore v. Railroad*, 85 Mo. 588 ; *Smith v. Railroad*, 92 Mo. 359 ; *Cox v. Granite Co.*, 39 Mo. App. 424, and cases cited. ( 2 ) The court did not err in refusing to sustain the demurrer to the evidence. *Moore v. Railroad*, 85 Mo. 588 ; *Cox v. Granite Co.*, 39 Mo. App. 424 ; *Soeder v. Railroad*, 100 Mo. 673. ( 3 ) The law presumes plaintiff was in the exercise of ordinary care. *Buesching v. Gas Co.*, 73 Mo. 219 ; *Parsons v. Railroad*, 94 Mo. 286. ( 4 ) It is no ground for reversal in this case because plaintiff was permitted to testify to his being married, and to the number of his children. *Winters v. Railroad*, 39 Mo. 475 ; *Conroy v. Iron Works*, 75 Mo. 652 ; *Stephens v. Railroad*, 96 Mo. 207 ; *Tetherow v. Railroad*, 98 Mo. 74. ( 5 ) The appellant's instructions, numbered 1, 2 and 3, refused by the court, were rightly refused. The fact that Stephens had the power and authority to superintend, direct and order the night employes of defendant in the yards in regard to their work does make Stephens a vice-principal. See authorities above cited. ( 6 ) The appellant in this case makes no complaint in this court because of the instructions given on

behalf of plaintiff.   Unlike the *Stephens case* ( 96 Mo. 207 ) there is no complaint that plaintiff's instruction was too general on the question of measure of damages. Nor is it seriously urged that the damages assessed by jury were excessive, and these facts take the case out of the rule laid down in 96 Mo., *supra*, and plaintiff's testimony as to his children is not reversible error.

BARCLAY, J.—Plaintiff was in defendant's service as a laborer under Mr. Stephens, who as " hostler " had charge and care of defendant's engines in the roundhouse.   As such, he also had control and direction of the men necessary to assist him in that work.   It is conceded that he had superintending oversight of plaintiff, but the claim is made that he was, nevertheless, a fellow servant of the latter in respect of the movement of the engine which did the damage, and that, consequently, his negligence could not properly furnish a basis for a recovery herein.   This is the main question in the case.

A person employed to perform any of the master's duties toward his servant is, while that relation continues and in respect to such duties, no fellow servant of the latter.   The duties which the master owes the servant may, in many particulars, be delegated to subordinates, and the wide extent of modern business enterprises often necessitates so doing ; but that delegation of authority does not relieve the master from a proper discharge of those duties.

In this case, Mr. Stephens, when the accident happened, was in entire charge of the place where the defendant's engines were kept and cared for, when not in use, and of the men needed for the work upon and about them.   It is not decisive of this case by what name his position, in that regard, was designated, nor whether he had authority to hire and discharge the men under him.

He was obviously intrusted at the time with the master's power of control of the practical business done at the roundhouse, of directing the movements of the engines, and of the plaintiff and of the other employes there    In exercising that control it was part of his duty to use ordinary care to furnish plaintiff a place to work which should be reasonably as safe as the nature of the employment permitted.    *Hannibal & St. Jo. Ry. Co. v. Fox* (1884), 31 Kan. 586.

It was also a part of his duty (in exercising such authority over and direction of the railroad business at the roundhouse as had been committed to him by the master) to use ordinary care not to expose any man under his orders to risks, unknown to the latter, not ordinarily incident to his employment.

Starting from these premises, which, we imagine, cannot at this day be fairly disputed, we go forward in the argument to other positions which are involved in some uncertainty, owing to the conflict of judicial decisions regarding them. We shall not attempt to review the precedents, but will merely state the principles, deducible from them, which meet our approval.

It was undoubtedly within the scope of Mr. Stephens' authority, as "night hostler" or "boss," to direct where the engine and tender, that struck plaintiff, should be placed, and how and when they should be moved over the tracks. In giving directions to that end and seeing to their execution, we think he was performing the master's part, and as such was the representative of the latter and not a mere fellow servant of the plaintiff.

If he had expressly directed the engine to be moved down by another upon the plaintiff, in the manner described in the evidence for the latter, the defendant would have been responsible for the act, and we are unable to perceive any logical or reasonable distinction between so directing it and his performing such negligent act himself, in the circumstances here shown. It

was one which fell within his authority as the master's representative to direct, and it can make no difference in principle whether he did it personally or by another, in its bearing on the rights of the parties to this cause, where his act involved an obvious breach of the master's duty to use care to provide a reasonably safe place for plaintiff to work ( as already defined ). The performance of that duty was intrusted to the "hostler," and his negligence in not performing it is ascribable to the master.

In view of the result reached on another branch of the case, we do not deem it necessary to enlarge upon the reasons for the foregoing rulings at this time, but refer, instead, to some decisions in which they may be found: *Chicago & M. Ry. Co. v. Ross*, 112 U. S. 377; *Berea Stone Co. v. Kraft* ( 1877 ), 31 Ohio St. 287; *Flike v. Railroad* ( 1873 ), 53 N. Y. 549; *Grizzle v. Frost* ( 1863 ), 3 Foster & F. 622; *Reddon v. Railroad* ( 1887 ), 5 Utah, 344; *Rima v. Iron Works* ( 1890 ), 120 N. Y. 433; *Anderson v. Bennett* ( 1888 ), 16 Oregon, 515; *H. & St. Jo. Ry. Co. v. Fox* ( 1884 ), 31 Kan. 586.

That there was evidence on plaintiff's part sufficient to justify the submission of the issue of defendant's negligence, in the backing of the engine upon him while at work, without warning, is not now seriously disputed. We also regard the question of the contributory negligence of plaintiff as one for the jury on the facts disclosed.

II.   But it becomes necessary to reverse the judgment, because of the admission of evidence of the number of plaintiff's children and their ages, against the objection and exception of defendant. The admission of such testimony has been positively disapproved by this court ( *Stephens v. Railroad* ( 1888 ), 96 Mo. 207 ), and by other courts. *Penn. Co. v. Roy* ( 1880 ), 102 U. S. 451; 1 Am. & Eng. R. R. Cases, 225; *Kreuziger v. Railroad* ( 1888 ), 73 Wis. 158, and 40 N. W. Rep. 657;

*Dreiss v. Freidrich* ( 1882 ), 57 Tex. 70 ; *Pitts., F. W. & Ch. Ry. Co. v. Powers* ( 1874 ), 74 Ill. 341.

Whatever remarks are found in other cases to the contrary ( for example, in *Winters v. Railroad* ( 1867 ), 39 Mo. 468, and *Conroy v. Iron Works* ( 1882 ), 75 Mo. 652 ), cannot longer be regarded as authoritative.

Nothing that took place at the trial can be considered as curing the error referred to. On the contrary, the only instruction given by the court on the measure of damages rather gave prominence to that piece of irrelevant testimony, by alluding to plaintiff's "situation in life" and to "the extent to which he is disabled from making a support for himself and *family.*" In this condition of the record we certainly cannot fairly pronounce the error harmless.

The rule on this subject is, that error is presumptively prejudicial. It devolves on a party claiming it to be otherwise, to show its innocuous character. Here, we think, such showing has not been successfully made, and a reversal must follow.

III. It is not necessary to discuss the other assignments of error.

The judgment is reversed and the cause remanded, with the concurrence of all the judges of this division.