## CHARLES McINTYRE, Respondent, v. LEWIS B. TEBBETTS et al., Appellants.

**St. Louis Court of Appeals, June 8, 1909.**

1. **MASTER AND SERVANT:** *Fellow-Servant:* **Vice-Principal.** At a detached place of operation, where part of the master's business is carried on under the control of a servant, who is empowered to employ men for his crew, regulate their work and let them go at pleasure, such servant is a vice-principal, and not a fellow-servant of the other members of the crew.

2. ————: ————: ————: **Dual Capacity.** Where a servant's task is to drive a wagon and team and also to control the hauling and give orders to the other servants, he discharges two-fold functions.

3. ————: ————: ————: **Question for Court or Jury.** The question whether a servant is a vice-principal or a fellow-servant is for the jury, when the facts are in dispute or reasonable men may come to different conclusions from them, and is for the court when the evidence will permit of but one conclusion.

4. ————: ————: ————: **Case Stated.** A servant, whose main task was to drive a team and wagon, but who also controlled the hauling and gave orders to the men, told plaintiff, who was riding in the wagon, to take a pinch bar to the shop and meanwhile he would drive across certain railway tracks and wait until plaintiff returned. Plaintiff took the bar, as told, and on coming back to the wagon attempted to climb into it, by means of the hub of one of the front wheels, and just as he put his foot on said hub, the said servant driving the team started the same forward, causing plaintiff to be thrown down and injured. *Held*, as a matter of law, that plaintiff and the servant driving the team were fellow-servants while the latter was engaged in his task of driving.

### NORTONI, J., Dissenting.

5. ————: ————: ————: **Case Stated.** A servant, whose main task was to drive a team and wagon, but who also controlled the hauling and gave orders to the men, told plaintiff, who was riding in the wagon, to take a pinch bar to the shop and meanwhile he would drive across certain railway tracks and wait until plaintiff returned. Plaintiff took the bar, as told, and on coming back to the wagon attempted to climb into it, by means of the hub of one of the front wheels, and just as he put his

foot upon said hub, the said servant driving the team started the same forward, causing plaintiff to be thrown down and injured. *Held*, that the servant was acting in the capacity of vice-principal at the time he was driving the wagon forward, even though otherwise the act was one of ordinary service.

6. ———: ———: ———: **Effect of Foreman Doing Work of Servant.** Where a foreman has complete charge of the master's wagon, and authority to employ, discharge and direct the laborers thereabout, in driving such wagon, whether he does so himself, or whether he orders one of those working with him to do so, he is acting in the capacity of a vice-principal.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

REVERSED AND CERTIFIED TO SUPREME COURT.

*Jones, Jones, Hocker & Davis* for appellant.

(1) Defendants were not negligent. They had performed every duty which the law and the circumstances imposed upon them. Moore v. Railroad, 85 Mo. 588; Schaub v. Railway Co., 106 Mo. 87; Browning v. Railroad, 124 Mo. 55; Card v. Eddy, 129 Mo. 510; Grattis v. Railroad, 153 Mo. 380; Jones v. Railroad, 178 Mo. 528; Livengood v. Lead and Zinc Co., 179 Mo. 229; Edge v. Electric Ry. Co., 206 Mo. 471; Zellars v. Light Co., 92 Mo. App. 107; Railroad v. Baugh, 149 U. S. 368; Railroad v. Hambly, 154 U. S. 349; Railroad v. Keegan, 160 U. S. 259; Bradley v. Tea and Coffee Co., 111 S. W. 919. (2) The driver of the wagon was not negligent. (3) (a) The driver of the wagon was not the vice-principal or *alter ego* of the defendants. (b) The driver and plaintiff were fellow-servants. Lee v. Bridge Co., 62 Mo. 565; Marshall v. Schricker, 63 Mo. 310; Relyea v. Railroad, 112 Mo. 86; Glover v. K. C. Bolt & Nut Co., 153 Mo. 327, 342; Hawk v. Lumber Co., 166 Mo. 121; Stephens v. Lumber Co., 98 Mo. App. 365; Stocks v. Transit Co., 106 Mo. App. 129; Koerner v. St. Louis Car Co., 107 S. W. 481; Strottman v. Railway, 109 S. W. 769, and cases cited under points 1 and 4. (4) The

act of the driver, if negligent, was the act of a servant as
such.    Moore v. Railroad, 85 Mo. 588; Dayharsh v.
Railway, 103 Mo. 570; Miller v. Railroad, 109 Mo. 350;
Card v. Eddy, 129 Mo. 510; Grattis v. Railroad, 153 Mo.
380; Jones v. Railroad, 178 Mo. 528, 544; Livergood v.
Zinc Co., 179 Mo. 229; Bane v. Irwin, 172 Mo. l. c., 310;
Fogarty v. Transfer Co., 180 Mo. 490; Edge v. Electric
Ry. Co., 206 Mo. 471; Garland v. Railway, 85 Mo. App.
579; Zellars v. Light Co., 92 Mo. App. 107; Bien v. Tran-
sit Co., 103 Mo. App. 399; Stephens v. Lumber Co., 110
Mo. App. l. c. 405; Bokamp v. Railroad Co., 123 Mo.
App. 270.    (5)    (a)    Plaintiff assumed the risk of the
accident and consequent injury.    (b)    Plaintiff was
guilty of contributory negligence.    Schroeder v. Rail-
road, 108 Mo. 322; Ross v. Railroad, 112 U. S. 377, 383;
Railroad v. Baugh, 149 U. S. 368.    (6)    The court erred,
therefore, in refusing to direct a verdict for the defend-
ants as requested.    (7)    The court erred in giving plain-
tiff's instruction No. 1 over the objection of the defend-
ants.    Marshall v. Schricker, 63 Mo. l. c. 311; Hawk v.
Lumber Co., 166 Mo. 121; Glover v. Bolt and Nut Co.,
153 Mo. l. c. 342.    (8)    The court erred in giving plain-
tiff's instruction No. 2 over the objection of defendants.
Clark v. Hammerle, 27 Mo. 55, 70; Fitzgerald v. Hay-
ward, 50 Mo. 516; Mallmann v. Harris Bros., 65 Mo.
App. l. c. 133, 134; Brown v. L. & L. Co., 65 Mo. App.
l. c. 166; Flynn v. Bridge Co., 42 Mo. App. 529; Voegeli
v. Granite Co., 49 Mo. App. 643; Garden Co. v. Railway,
64 Mo. App. l. c. 312; Borden v. The Falk Co., 97 Mo.
App. l. c. 570, and cases therein cited; Sullivan v. Rail-
way Co., 88 Mo. l. c. 182, and cases therein cited. Wojty-
lak v. Coal Co., 188 Mo. 260, 283.

*Wm. L. Igoe*  for respondent.

(1)  The question of whether the driver was a
vice-principal or a fellow-servant was properly submit-
ted to the jury.    Fogarty v. Transfer Co., 180 Mo. 490;
Bien v. Transit Co., 108 Mo. App. 414; Smith v. Car &

Fdy. Co., 122 Mo. App. 610; Stephens v. Lumber Co., 110 Mo. App. 398. (2) The driver was negligent. (3) The negligence of the driver was the negligence of a vice-principal and the master is liable. Holweg v. Telephone Co., 195 Mo. 149; Donnelly v. Mining Co., 103 Mo. App. 349; Strode v. Conkey, 105 Mo. App. 12; Haworth v. Railroad, 94 Mo. App. 224. (4) The law imposes upon the master the duty not to expose his employee to unknown risks not ordinarily incident to his employment, and not to increase the hazards of his position. Dayharsh v. Railway, 103 Mo. 576; Russ v. Railroad, 112 Mo. 50; Miller v. Railroad, 109 Mo. 357; Holweg v. Telephone Co., 195 Mo. 149. (5) Any defect in plaintiff's instruction No. 2, was cured by instructions given at defendant's request. Squiers v. Kansas City, 100 Mo. App. 632; Blackwell v. Hill, 76 Mo. App. 51; Quintlan v. Kansas City, 104 Mo. App. 616; Owens v. Railway, 95 Mo. 181; Hughes v. Railroad Co., 127 Mo. 452; Burton v. Insurance Co., 96 Mo. App. 207; Johnson v. Railway, 173 Mo. 307; Buckman v. Railway Co., 100 Mo. App. 34; Lange v. Railway, 106 S. W. 660.

Defendants are partners engaged in the manufacture of carriages. In their service was Joseph Kuhr, who was in charge of a freight wagon, his task being to drive the wagon and manage the helpers or crew which accompanied it. The wagon was a large vehicle, weighing when unloaded four thousand pounds, and having a bed very much wider than the usual width of wagon beds. One use of this vehicle was to haul surreys, buggies and other vehicles in which defendants dealt, from their factory or warehouse to the shipping stations of various railway companies in St. Louis, for shipment elsewhere. Usually six or seven crated vehicles were loaded in the wagon by the crew who went with it, hauled to the depot and unloaded there. Kuhr had command over the employees who assisted in loading and unloading the wagon and accompanied it from

the warehouse or factory to the depot, and besides directing these employees, he hired them.   Three or four men were required to carry on the work of the wagon. A crew was not kept in regular employment, but when one was needed Kuhr would pick up and hire by the hour two or three men who were available and in the habit of doing these odd jobs.   The compensation allowed was seventeen and one-half cents an hour while they were at work.   One of these men was plaintiff and he had been hired off and on for months; sometimes by Been, a clerk in one of defendants' warehouses, but oftener by Kuhr himself.   Kuhr had also employed other men when he needed them to help with the wagon, and his right to hire such help was recognized by defendants.   When he had finished the job for which he had employed a crew, he would give the men their time and they would go to the office and get their money.   On the day of the accident Kuhr had to haul some vehicles from the factory to a railway depot for shipment, and needing a relay of men to assist in the work, told plaintiff, who appears to have been waiting about the factory in the hope of a job, to hunt up another man named Tom Malloy, whom Kuhr was in the habit of using for similar work, and hurry back, as there was not much time in which to get the load into the car.   Plaintiff found Malloy, and Kuhr and these two men loaded the wagon and started to the depot, or rather to the John Deere Buggy Company's warehouse or plant, through which the vehicles had to be carried to load them into the car. Their course took them in the vicinity of the shop where Been, the shipping clerk, was in charge.   In the wagon was an implement known as a pinch-bar, which Kuhr wished to leave at that shop; so he told plaintiff to take the bar to the shop, and meanwhile he (Kuhr) would drive across certain railway tracks at the point and wait until plaintiff returned.   Plaintiff took the bar as told, and on coming back to the wagon attempted to climb in the front end where he had been riding and was

expected to ride. Just as plaintiff planted his foot on the hub of one of the front wheels and rose, throwing his weight on the hub, Kuhr started the team, throwing plaintiff off the wagon on the street and injuring him seriously. Thus runs the evidence for plaintiff. In defense it is said Kuhr was a fellow-servant of plaintiff, or if a vice-principal part of the time, was a fellow-servant when he started the wagon and threw plaintiff off. This is the charge of negligence:

"Plaintiff says that on the said 29th day of January, 1907, and while in the performance of his duties as an employee of defendants, he was getting upon said wagon, and while he was upon one of the wheels of said wagon, the said 'Joe,' who was then and there acting for defendants, and exercising his power to superintend, direct and control the operation of the said wagon, negligently and carelessly caused said wagon to be drawn forward, without warning or notification to plaintiff, although the said 'Joe' knew or by the exercise of proper care might have known, that plaintiff was on the wheels of said wagon and about to climb upon said wagon. Plaintiff states that in consequence of the negligent and careless movement of said wagon as aforesaid he was thrown violently to the ground, and his right leg and right side bruised and the sight of his right eye permanently destroyed and causing him great bodily pain."

The court refused to direct a verdict for defendants and refused to declare Kuhr was a fellow-servant of plaintiff at the instant of the accident. At defendants' request the jury was told no presumption of negligence on the part of defendants arose from the fact of the accident, but the burden was on plaintiff to show he was injured because of defendants' negligence in starting while plaintiff was attempting to get into the wagon; that it was not negligence to start if defendants did not know, or by the exercise of ordinary care would not have known, plaintiff was attempting to get in it at the time; that if plaintiff slipped and fell, but not as the

result of any act of defendants or their agents or servants, the verdict must be for defendants. On the issues of whether or not Kuhr was a vice-principal usually, and whether he was acting as vice-principal or fellow-servant when he drove forward just as plaintiff was stepping into the wagon, the court gave these instructions, to which defendants excepted:

"The court instructs the jury that if you find and believe from the evidence that Joseph Kuhr was employed by defendants and was a foreman in charge of the team and wagon in question, and the men employed on and about said wagon, and by virtue of his employment and position had immediate control and direction of plaintiff and others engaged in working on and about said wagon and had authority to direct and control plaintiff's work, then the said Joseph Kuhr was a vice-principal and was not a fellow-servant of plaintiff.

"The jury are instructed that if the negligence of a foreman arises out of and is the direct result of the exercise of authority conferred upon him by the master, as a foreman, the master will be liable for such negligence, but if the negligence complained of consists of some act committed or done by him which relates to his duties as a co-laborer with those under his control, and which might just as readily have happened with one of them having no such authority, their employer will not be liable. If you find and believe from the evidence that plaintiff on or about the 29th of January, 1907, was in the employ of defendants and that while so employed and while acting in the line of his duties he was getting upon the wagon in question and while upon one of the wheels of said wagon, said wagon was started forward by the driver Joseph Kuhr and that plaintiff did not know that said wagon was about to be moved and that no notice or warning was given him of the moving of said wagon and that the starting forward of said wagon was the direct cause of the injuries to plaintiff, and if you further believe from the evidence that the said Jo-

seph Kuhr was a foreman or vice-principal of defend-
ants as defined in instruction No. 1, and that in starting
said wagon forward the said Joseph Kuhr was in the ex-
ercise of his authority and not merely in the discharge
of his duties as a co-laborer of plaintiff, and if you fur-
ther find that at the time of receiving said injuries,
plaintiff was himself exercising ordinary care and pru-
dence, then your verdict will be for the plaintiff."

A verdict for $2,500 was returned in plaintiff's fa-
vor, and judgment having been rendered in accordance
with it, this appeal was taken.

## OPINION.

GOODE, J. (after stating the facts).—Kuhr was
foreman of the wagon crew and the other mem-
bers were under his authority. The wagon was, so to
speak, a detached place of operation where part of de-
fendants' business was carried on under Kuhr's con-
trol. He was empowered to employ men for his crew,
regulate their work and let them go at his pleasure.
Those facts were presented in the first instruction, and
the jury were told if they found them to exist, Kuhr
was a vice-principal and not a fellow-servant of the
plaintiff. The court did not err in this ruling. [Miller
v. Railroad, 109 Mo. 357; Russ v. Railroad, 112 Mo. 49;
Edge v. Electric Ry. Co., 206 Mo. 471.] We will say all
the instructions strike us as accurate and fair, and if
the case should have gone to the jury on the questions
of whether Kuhr was a vice-principal or fellow-servant,
and in which capacity he was acting at the moment of
the accident, the issues were well presented. The
main part of Kuhr's task was to drive the wagon
and team. He did this as well as control the
hauling and give orders to the men. Hence he dis-
charged two-fold functions, and the principal inquiry
is whether the entire evidence proved he was acting as
a common member of the wagon crew at the instant he
drove forward and caused plaintiff's hurt, or as vice-

principal.    Counsel for defendant insist the evidence
shows, beyond inference to the contrary, the starting of
the wagon was an act incident to his ordinary duties as
driver, and in no sense an exercise of his authority as
foreman.    The leading opinion in this State on what is
denominated the dual capacity doctrine, is Fogarty v.
Transfer Co., 180 Mo. 490, wherein it appeared the
driver of a freight wagon had been injured by the neg-
ligent act of a foreman.    Many of the facts were like
those we have here, but one distinguishing circumstance
appeared.    Said foreman took the lines from Fogarty
and undertook to back the wagon himself; thereby as-
suming, by virtue of the authority vested in him as fore-
man, to supersede the regular driver in the performance
of a task the foreman had not been performing before,
and in the course of which he hurt the driver.    In the
case at bar, when Kuhr started the team forward and
hurt plaintiff, he simply continued to drive; for, prop-
erly considered, he was driving while he held the lines
as the wagon and team stood waiting for plaintiff.    It is
plain the careless act of the foreman in the Fogarty case
wears more the appearance of an exercise of mastery
than does Kuhr's as the opinion shows (loc. cit. 512) ;
and hence it does not follow the capacity in which Kuhr
acted was for the jury, merely because the Supreme
Court held the question of capacity was for the jury in
the Fogarty case.  · In Bien v. Transit Co., 108 Mo. App.
399, this court approved the submission of a like ques-
tion on the authority of the Fogarty opinion, and it is
charged now by counsel for the defendant, that in doing
so we misled the court below in the present case into
submitting to the jury what was really a court matter.
The facts of the Bien case regarding the magnitude and
complication of the affairs controlled by the foreman
who figured therein  are so unlike those before us as to
put that authority out of point; but we seize the op-
portunity to call counsel's attention to the fact that the
Supreme Court in Holweg v. Tel. Co., 195 Mo. 449, and

McIntyre v. Tebbetts.

Edge v. Railroad, 206 Mo. 471, 492, approved and quoted from the opinion in the Bien case. Counsel say we misconceived the import of the Fogarty case in holding it was applicable to an accident that had happened in this State, because the Supreme Court held the question was a jury one in obedience to the law of Illinois where the Fogarty accident happened. This contention is unsound. The Supreme Court showed in the Fogarty opinion (loc. cit. 511) the law of Illinois and the law of Missouri, as regards when the issue of vice-principal or fellow-servant is for jury or court, are not different. The courts of Missouri and Illinois hold alike on this matter, and that the question is for the jury when the facts are in dispute or reasonable men may come to different conclusions from them, and is for the court when the evidence will permit but one conclusion. Norton v. Nadebok, 190 Ill. loc. cit. 599. What we have said supra is more by way of answer to the attack of counsel on the opinion in the Bien case than in decision of this one.

Some of the early Missouri opinions either explicitly or implicitly refused to determine the master's liability for an injury to an employee by a co-employee, upon the theory that a superior servant or foreman might do two-fold duties, and the master be liable for his carelessness while engaged in the performance of one class of duties, because the superior servant was then exercising the master's authority, and not be answerable in the other class when he was performing duties common to him and the injured servant. [Hutson v. Railroad, 50 Mo. App. 300; Hughlett v. Lumber Co., 53 Mo. App. 87; Dayharsh v. Railroad, 103 Mo. 570; Russ v. Railroad, 112 Mo. 45.] We will not examine the facts and doctrine of those cases, because the dual service theory is established as the law of the State by the recent decisions. [Fogarty v. Transfer Co., supra.] Lawyers disagree in their opinions about the soundness of that doctrine, but if it is to be a rule of decision, the facts of the present case invoke it with peculiar force. Unlike

the foreman in the Bien case, Kuhr was charged with the regular performance of common duties, wherein he was a co-worker with the wagon crew. The rule is more acceptable in such a case than where the foreman or vice-principal was not charged with any service common to other employees, but of his own volition undertook an act of common service and in performing it hurt a workman. Long reflection has failed to reveal how Kuhr's act of driving forward involved an exercise of authority. It seems to us to have been beyond doubt an act of common service which was done in the course of his ordinary task. We cannot imagine a case wherein a person, who is both foreman and common employee, could do an act more clearly pertaining to the latter capacity rather than foremanship, than was Kuhr's starting the team. The causal act of Kuhr was within the description in Bane v. Irwin, 172 Mo. 306, 317, of what is a fellow-servant's act though done by one who is foreman, too. "We agree with counsel for defendant, 'It is the *act* and not the *rank* of the vice-principal which determines whether two employees are fellow-servants.' In this case the acts of Gibbs were the acts of the master. It is true that, according to the evidence, Gibbs at times did the work of a servant in loading and firing the shots, and had the injury occurred while he was performing a servant's duty, he and plaintiff would have been fellow-servants; but it is clear that the negligence in this case was the negligent order to plaintiff to return to the dangerous place and fire the remaining shot and the injury was the consequent result of that order, and not the negligent loading and tamping of the shot. While Gibbs acted in a dual capacity, the injury here resulted from the order in making which he represented the master." We are cited to Holweg v. Tel. Co., 195 Mo. 166, as an authority for plaintiff. In that case the foreman of a department caused an injury to a fellow employee by making the place where the latter worked unsafe during the tem-

porary absence of the regular operator of the machine. The foreman attempted to operate the machine, left a block of wood on the table and this block was the cause of the injury. Said case may rest on the ground that the master's non-delegable duty to use ordinary care to furnish the servant a safe place to work was broken. The Dayharsh case was distinguished on the same ground in the Fogarty opinion which examines and discriminates the various Missouri decisions.

The judgment is reversed. *Reynolds, P. J.,* concurs; *Nortoni, J.,* dissents and requests the case to be certified to the Supreme Court as in conflict with Dayharsh v. Railroad, 103 Mo. 570. It is so ordered.

### DISSENTING OPINION.

NORTONI, J.—The dual capacity doctrine is one which presents more or less difficulty in its practical application, and it is therefore important that the question presented for decision in this case should be determined and defined with precision by the court of last resort. I am unable to agree with the opinion of the court in this instance for the reason that it seems to me to be in conflict with the principle announced in Dayharsh v. Han. & St. Jos. Ry. Co., 103 Mo. 570. The foreman in this case represented the master in and about the institution in his charge. This institution, it is true, was nothing more nor less than a large wagon. Nevertheless this wagon, together with complete authority thereabout, was given into the foreman's charge by his employer. His authority included the right to employ and discharge those who aided him as well as direct their movements and the movements of the wagon and team in his charge. On this state of facts, there can be no doubt that had this foreman directed another employee to drive the team and move the wagon forward at the particular time in question—that is, while plaintiff was in the act of mounting the same—and thus entailed the injury, liability for plaintiff's hurt would thereby at-

tach *prima facie* against defendant for the reason it resulted from an act of the foreman, vice-principal, while exercising the authority of his master. Now can the mere fact that the foreman himself performed the manual act of driving the team and moving the wagon forward which resulted in injury to the plaintiff, instead of ordering another to do so, change the situation with respect to the rights of the injured party? The Dayharsh case presents a situation much like the one here involved. There, Dayharsh was directed by Mr. Stephens to enter a cinder pit beneath the railroad track and remove the cinders therefrom. It is true the statement of facts accompanying the report of that case is not clear on the question; nevertheless it appears from the opinion that while Dayharsh was thus engaged in the pit, the foreman, Stephens, assumed charge of a locomotive engine, and by his own hand, propelled it forward over the cinder pit and injured Dayharsh. The Supreme Court affirmed liability in that case against the defendant railroad company on the ground that Stephens, the foreman, was vice-principal when he performed the manual act of performing the duties of engineer in moving the locomotive forward. In expressing its views of the case, the Supreme Court said as follows:

"It was undoubtedly within the scope of Mr. Stephens' authority, as 'night hostler' or 'boss' to direct where the engine and tender, that struck plaintiff, should be placed, and how and when they should be moved over the tracks. In giving directions to that end and seeing to their execution, we think he was performing the master's part, and as such was the representative of the latter and not a mere fellow-servant of the plaintiff. If he had expressly directed the engine to be moved down by another upon the plaintiff, in the manner described in the evidence for the latter, the defendant would have been responsible for the act, and we are unable to perceive any logical of reasonable distinction

between so directing it and his performing such negligent act himself, in the circumstances here shown. It was one which fell within his authority as the master's representative to direct, and it can make no difference in principle *whether he did it personally or by another."*

It seems to me the principle of that case should control the disposition of this one. The Dayharsh case is precisely in point, as I understand it.

It may be said, too, that in the later case of Ross v. Wabash, etc., Ry. Co., 112 Mo. 45, wherein the Supreme Court was dealing with the matter of a section foreman of a railroad, who had power to employ and discharge men under him and control their work and movements, the same doctrine was affirmed. In that case the court declared such foreman to be a vice-principal and said that his negligent acts done in the performance of duties that devolved upon him as foreman, were the negligent acts of the defendant, for which it was liable. The court there affirmed liability on the manual act of the section foreman performed in his authority as foreman and not in respect of an order given to another in virtue of his authority. The principles of those cases, it seems to me are recognized and reaffirmed in the more recent case of Holweg v. Bell Tel. Co., 195 Mo. 149. Now in the cases referred to, in each instance the act performed by the foreman and upon which liability was affirmed, notwithstanding the fellow-servant argument presented, was a manual act performed by the foreman as such, and in this respect, I believe those cases to be strictly in point here. It will be observed in this case that the foreman having charge of this wagon had complete charge and control of the wagon as an institution and of the men who worked therewith. Besides having authority to employ, discharge and direct the laborers thereabout, he and he alone was possessed of authority to move the wagon from place to place. It seems to me that as he alone was possessed of the au-

140 App.—9.

thority of the master to move the wagon, it is entirely immaterial whether he exercised that authority in moving the wagon forward by driving the team with the lines in his own hands or whether he ordered one of those working with him to do so. Such is the doctrine of the Dayharsh case most certainly. I am of the opinion that the foreman was acting in the capacity of vice-principal at the time he was driving the wagon forward even though otherwise the act was one of ordinary service, and that he was not at the time a fellow-servant of the plaintiff. I therefore most respectfully dissent from the opinion of the court.

I deem the judgment of the court to be in conflict with the case of Dayharsh v. Han. & St. J. Ry. Co., 103 Mo. 570 and other cases herein referred to and therefore ask that the cause be certified to the Supreme Court for final determination, in accordance with the constitutional mandate.