## NICHOLAS MERTZ, Respondent, v. A. LESCHEN & SONS ROPE COMPANY, Appellant.

St. Louis Court of Appeals, May 6, 1913.

1. **MASTER AND SERVANT: Injury to Servant: Liability of Master: Question for Jury.** In an action by a servant for the loss of an eye, caused by a wire springing from the hands of the foreman and striking it while the foreman was endeavoring to thread the wire into the bobbin of a cable-winding machine, evidence *held* to justify submission to the jury of the question whether the foreman was guilty of negligence in permitting the wire to slip from his hand, although the testimony showed that he handled it in the manner wires had been handled for years and that no such accident had happened before.

2. **NEGLIGENCE: Evidence: Inference.** The fact that an appliance had been used for a long time in the same manner it was used at the time it caused an injury and that no injury had theretofore resulted therefrom, does not establish that the operator was not negligent on the occasion in question.

3. **MASTER AND SERVANT: Dual Capacity Doctrine: Vice Principal or Fellow Servant.** An operator of one of three machines, who had no authority over the other operators except when the three machines were operated together as a unit, at which times he superintended their operation and governed and directed the movements of the other operators, was a fellow servant of the other operators when the machines were operated separately, and a vice principal when they were operated as a unit.

4. ———: ———. The "dual capacity" doctrine is firmly established in our law.

5. ———: Non-delegable Duties of Master: Warning. The master's duty to warn a servant of a danger is a non-delegable duty.

6. ———: Injury to Servant: Dual Capacity Doctrine: Concurring Negligence. Where a servant is injured through the negligence of one who, in the performance of some duties, is his fellow servant, and, in the performance of others, is a vice principal, and the latter's negligence as a fellow servant concurs with his negligence as a vice principal in causing the injury, the master is liable.

7. ———: ———: ———: ———: Facts Stated. Plaintiff was employed to operate one of three cable-winding machines. At the time of his injury, the three machines were coupled together and operated as a unit, under the superintendency of one of the other operators. One of the bobbins on plaintiff's machine having run out of wire, the superintending operator started to insert a new wire, and directed plaintiff to watch the work so that he could do it the next time. The superintending operator negligently took the end of the wire between his thumb and fingers, which were covered with oil, to thread the wire into the bobbin, and plaintiff, being near-sighted, placed his face in close proximity to the bobbin, in order to see the operation, and the end of the wire sprung from the superintending operator's hand, struck plaintiff's eye and put it out. *Held*, that if it be conceded that the superintending operator was a fellow servant in putting the wire on the bobbin, yet, in instructing plaintiff and in giving the order to watch the work, he was a vice principal, and his failure to warn plaintiff of the danger of obeying the order rendered the master liable, since the master is liable for the concurring negligence of a vice principal and fellow servant.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Watts, Gentry & Lee* for appellant.

The demurrer to the evidence should have been sustained: (a) Because if Varwig was negligent in letting the wire slip from his hands and injure the plaintiff, his negligence was that of a fellow-servant for which the master is not liable. The men were un-

der a common superior, engaged in the common enterprise of making a strand of wire rope, in the same grade of service and with ample opportunity to observe each other's actions and report delinquencies to a common superior. Under such circumstances, even though Varwig had the power to say when to stop or start the machine, he and the plaintiff were fellow-servants. Padgett v. Iron & Steel Co., 140 S. W. 943; Forbes v. Dunnavant, 198 Mo. 193; Herbert v. Wiggins, 107 Mo. App. 287; Murray v. Cable & W. Co., 98 Mo. 573; McCarty v. Hotel Co., 144 Mo. 397; Hawk v. Lumber Co., 166 Mo. 121. (b) The demurrer to the evidence should have been sustained because the slipping of the wire was wholly unexplained. Where the evidence reveals the fact that an injury may have occurred from either one of two or more causes for one of which the master would be liable and for the others of which he would not be liable, plaintiff fails to make out his case unless the evidence clearly shows that the injury resulted from the cause for which the master would be liable. Garansson v. Manufacturing Co., 186 Mo. 300.

*George Safford* and *Barclay, Fauntleroy & Cullen* for respondent.

(1) For damages caused by negligence of one authorized by the master to perform a nondelegable duty of the master, there being no contributory negligence, the master is liable. Smith v. Car & F. Co., 122 Mo. App. 610; Hagan v. Mining Co., 131 Mo. App. 386; Knight v. Donnelly Bros., 131 Mo. App. 152; Doss v. Railroad, 135 Mo. App. 643; Burkard v. Rope Co., 217 Mo. 466. (2) For damages caused, in part, by the negligence of the master in the performance of a nondelegable duty, and, in part, by the negligence of a fellow-servant in the performance of a delegable duty, the master is liable; i. e., contributory negligence of a fellow-servant is no defense. Young v. Schickle,

103 Mo. 324; Dayharsh v. Railroad, 103 Mo. 570; Blue-
dorn v. Railroad, 108 Mo. 439; Foster v. Railroad, 115
Mo. 165; Browning v. Wabash, 124 Mo. 55; Deweese
v. Mining Co., 128 Mo. 423; Hutson v. Railroad, 50
Mo. App. 300; Ellingson v. Railroad, 60 Mo. App.
679; Hayworth v. Railroad, 94 Mo. App. 215; Moriar-
ity v. Swartzschild & Sulsberger Co., 132 Mo. App.
650-655; English v. Shoe Co., 145 Mo. App. 439-451;
Harvester Co. v. Bracak, 227 Ill. 71; Dougherty v.
Realty Co., 146 Ill. App. 219.   (3)  The duty to warn
is a nondelegable duty, for negligence in the perform-
ance of which, in the absence of contributory negli-
gence, the master is liable.   Miller v. Railroad, 109
Mo. 357; Doss v. Railroad, 135 Mo. App. 648; Mihileck
v. Mignery, 155 Mo. App. 325; Schlavick v. Shoe Co.,
157 Mo. App. 83.

ALLEN, J.—This is an action for personal in-
juries consisting of the loss of an eye, suffered by
plaintiff while in the employ of defendant as its serv-
ant.   Plaintiff recovered and defendant prosecutes the
appeal.

Defendant is a manufacturer of wire rope, and at
the time that plaintiff received his injuries, his duties
ordinarily consisted in operating a machine designed
for making such rope.   The machine in question is a
very complicated one, and nothing like a complete de-
scription of it need be attempted.   It had a number of
bobbins which carried the separate strands of wire
and from which these separate wires were unwound,
later to be wound into a rope or cable.   There were
three of these machines, of practically the same kind,
placed in a row.   One of them was ordinarily operated
by plaintiff, another by one Baer and the third by one
Varwig.   These three machines could be operated sep-
arately, as they ordinarily were, or they could be
coupled up and operated together, as was done when

it was desired to make a large wire rope or cable. When the machines were run separately each operator attended to his own machine; when they were coupled however and running together Varwig had charge of the three machines. One Berding was the foreman over this department, having charge of the entire floor upon which these machines were situated. It was he who instructed plaintiff how to operate his machine when plaintiff was first put to work at it. Plaintiff had been working at this machine about a month prior to the accident.

All three of these operators were subject to the general orders and directions of the foreman, Berding. However, when the three machines were coupled up as described above, it appears that under the master's orders Varwig was to have charge of and supervision over all three of the machines, with authority to give directions to the other two men. With respect to his own duties and authority, when the three machines were running together, a portion of Varwig's testimony, as it appears in the record, is as follows: "I had to give directions to two men. . . . Mr. Mertz was working under me and he received orders from me. He had been working in that department about a month and he received his directions from me, that is provided we were coupled up. We had three machines coupled together when he was working under me; otherwise I didn't have anything to do with him. When the three machines were working together, I had charge of them. . . . At all times, except when the three were coupled, I had no authority whatever over Mertz and gave him no orders of any kind. . . . Whenever we coupled up, I was supposed to instruct them."

In regard to this same question, a portion of plaintiff's testimony appears as follows: "When the three machines were coupled together it took three of us to run them. Mr. Varwig had charge of the crew

of three and gave instructions to me and to Mr. Baer. When they were coupled together no one but Varwig gave the instructions as to how the machines were to be run. . . . Whenever we ran together he had charge of them. Mr. Berding told us to go to Varwig for instructions when we were coupled up together. That was when I first went on.''

At the time plaintiff received his injury, the three machines were coupled and running together, for the purpose of making a larger cable out of the wires that came from the three machines. When so running the finished cable came out from Varwig's machine. It started at plaintiff's machine with twelve wires, continuing through Baer's machine, where it received twelve more wires, on through Varwig's machine, which carried eighteen wires. In addition to these smaller wires, there was a big wire in the center of the cable that began with plaintiff's machine, and about which the smaller wires were wound. Each small wire was unwound from a separate bobbin, and, by complicated movements of the machines, the wires were ultimately wound into a large strand of wire rope.

When these machines were thus being operated in conjunction with each other, any one of the operators could stop all three machines. This was done in case a wire broke, or a bobbin ran out of wire, etc. On the day in question these three machines were being so operated, when a bobbin on plaintiff's machine became empty and the machines were stopped to fill this bobbin. In doing this it was necessary to put the wire through a small hole in what is called the journal of the flier. It appears that plaintiff had put wires on larger bobbins, but that he had never done so with a small bobbin, such as had become empty, and Varwig testified that it had to be done in a way different from that which was employed in the case of larger bobbins such as plaintiff had been using. It appears in fact that plaintiff had never put a wire through one of these

journals when the machines were coupled up. In order to do this Varwig took hold of the end of the wire, telling plaintiff to hold the bobbin, to tighten the tension, and directing plaintiff to watch how he did it, saying: "Watch me while I put this through the flier so that you can do the same thing the next time yourself." Varwig testified that he took hold of the wire with his right hand about four inches from the end of the wire, with this hand under the wire, holding the latter between his thumb and his fingers; that with his left hand he grasped the wire probably about two and one-half or three feet from his right hand. He was using his right hand to put the wire into the hole in the journal of the flier, keeping all the time his left hand about two and one-half or three feet further down on the wire, and was starting to put the wire into this hole. While he was so doing he called to plaintiff, telling him to watch how it was done so that plaintiff could do the same thing thereafter. Thereupon plaintiff, who was nearsighted, and which Varwig knew, placed his face within about two feet of the end of the wire to watch Varwig thread it into the hole in question. Varwig did not get the wire into the flier, but it slipped or flew out of his right hand, the end of the wire flying upward and springing backward, striking plaintiff in the eye, and putting his eye out. It appears that the wire did not move at all from Varwig's left hand. He did not let go of the wire with this hand at all. In other words it does not appear that the wire was jerked or pulled from Varwig's hands or that it slipped longitudinally out of his right hand; on the contrary it appears that when he had hold of it from beneath, with the thumb and fingers of his right hand, about four inches from the end, this portion of the wire slipped upward out of his grasp, and that the spring in it caused it to fly back far enough to strike plaintiff in the eye. The wire was oily and slippery, and Varwig's hands were covered with oil.

The latter testified that he was threading the wire into the hole in question in the same way that he had always done heretofore, but nevertheless the wire slipped from his fingers.

At the close of plaintiff's case defendant offered an instruction in the nature of a demurrer to the evidence, which was refused by the court. Thereupon defendant offered no evidence, except three photographs, two being of the machine upon which plaintiff was working, and one showing the three machines as they were being operated at the time of plaintiff's injury.

Appellant's only assignment of error pertains to the overruling of its demurrer to the evidence. It is contended that the demurrer should have been sustained, (1) because, even granting that Varwig was negligent, his negligence was that of a fellow-servant; (2) because no negligence on the part of Varwig was shown; and (3) because the slipping of the wire was unexplained and therefore the injury may have occurred from either one of two or more causes, for only one of which the master would be liable.

I. Taking up the reasons why appellant says that its demurrer should have been sustained, we may dispose of the second and third thereof together. In the first place it will not do to say, as does appellant, that the slipping of the wire was wholly unexplained, and therefore that it may have happened from a cause for which the master would not be liable. Appellant's contention is that, inasmuch as plaintiff had charge of one end of the wire—i. e., had hold of the bobbin to keep the wire from unwinding—and Varwig had hold of the other end of the wire, therefore the latter may have been caused to slip by reason of some act of plaintiff, as well as by reason of any failure on the part of Varwig to hold it properly. Varwig's testimony however puts this theory out of the case. From his testimony it is evident that the wire did not slip

back out of his hands; on the contrary it appears that
he held it firmly with his left hand about two and one-
half or three feet from the end of the wire. The evi-
dence tends to contradict any theory that the wire
slipped longitudinally at all. It seems that what hap-
pened was that the end of the wire flew upward out
of his right hand, i. e., from the grasp of the thumb
and fingers of his right hand, with which he was hold-
ing it from below, about four inches from the end of
the wire. In other words, so far as concerns the spring-
ing back of the wire, this was evidently occasioned
by Varwig's permitting the end of it to thus slip up-
ward out of the grasp of the thumb and fingers of his
right hand. No other theory is tenable under the evi-
dence, and the latter clearly indicates that this was
what happened. Hence so far as the slipping of the
wire is concerned, the question is purely whether it
can be said to have been negligence on the part of Var-
wig to thus allow the end of it to escape from his grasp.
It certainly cannot be held, as a matter of law, that
Varwig was in no way negligent in thus permitting the
end of the wire to slip from between his thumb and
fingers.

Appellant lays considerable stress on Varwig's
testimony to the effect that he had for years inserted
wires in the journals of these fliers, without having the
wire slip from his hand as it did upon this occasion,
and that he was performing the operation in question
just as he had been doing for all of these years. From
this it is argued that it could not have been negligence
on the part of Varwig to do as he did. This, however,
is a *non sequitur*. It by no means proves that Varwig
was not negligent upon this occasion. In fact we are
more inclined to think that this has some tendency at
least to show that Varwig was negligent on the occa-
sion in question, for it would seem that, with due care
on his part, the wire might have been inserted in the
place in which it was intended to go, as had been done

on numerous occasions prior thereto. His fingers were oily and slippery. It does not appear whether he customarily undertook to perform this operation with his fingers covered with oil, but at any rate this was a circumstance to be considered by the jury, touching the question of his negligence. We entertain no doubt that the question of Varwig's negligence with respect to the holding of the wire was properly one to be referred to the jury.

II. The liability of the master hinges upon whether plaintiff and Varwig were fellow-servants. It cannot be doubted that, when the three machines in question were connected and being operated together, Varwig, during such period, occupied in general the relation towards plaintiff of vice principal and became the *alter ego* of the master. We think this is beyond dispute or cavil. It is clear that the master had conferred authority upon Varwig to take charge of and superintend the operation of the three machines, when being operated together, and to govern and direct the movements of the other two men in question during such period of time. Ordinarily, then, plaintiff and Varwig were not fellow-servants during such period, but the latter occupied toward plaintiff the position of vice principal.

In Burkard v. Rope Co., 217 Mo. l. c. 482, 117 S. W. 35, the rule laid down in Moore v. Railroad, 85 Mo. 588, is reaffirmed, citing the cases in which it has been followed, the court saying:

"It is ruled that they are fellow-servants who, under the direction and management of the master himself, or by some servant placed by the latter over them, are engaged in the prosecution of the same common work, and without any dependence upon or relation to each other except as colaborers without rank, and that he is a vice principal who is intrusted by the master with power to superintend, direct or control the workman in his work, and that for negligence in

such superintendence, direction or control, the master is liable. That case has been many times cited with approval by this court. [Hoke v. Railroad, 88 Mo. 361; Stephens v. Railroad, 86 Mo. 221; Smith v. Railroad, 92 Mo. 359; Tabler v. Railroad, 93 Mo. 79; Russ v. Railroad, 112 Mo. 45.]''

In the same case (Burkard v. Rope Co., supra) the court quotes approvingly from LaSalle v. Coste, 190 Ill. 130, where the following rule was enunciated:

''Where a master confers authority upon one of his employees to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employee, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master, and not a mere fellow-servant; and all commands given by him within the scope of his authority are in law the commands of the master.''

Numerous other cases might be cited to show that the question as to who are and who are not fellow-servants is to be determined by the principles asserted in the cases from which we have just quoted; but we deem reference to further authorities unnecessary.

The ''dual capacity'' doctrine is firmly established in our law. [See Radtke v. Basket & Box Co., 229 Mo. l. c. 23, 129 S. W. 508; Fogarty v. Transfer Co., 180 Mo. 490, 79 S. W. 664; Bane v. Irwin, 172 Mo. 307, 72 S. W. 522; Bien v. Transit Co., 108 Mo. App. 399, 83 S. W. 986; McIntyre v. Tebbetts, 140 Mo. App. 116, 120 S. W. 621; English v. Rand Shoe Co., 145 Mo. App. 438, 122 S. W. 747.] When the three machines were running separately, plaintiff and Varwig were fellow-servants. But there can be no doubt that upon occasions when large cables were being manufactured by running the three machines together, Varwig had the superintendence and control over the other two workmen who were then engaged in this particular

branch of the master's business. His testimony, as well as that of plaintiff, shows that he then had authority, as the representative of the master, to give orders and commands to the other two men and to direct and control their movements and operations, and it was his duty to instruct them. Clearly, then, upon such occasions, and while in the performance of such duties, he was not a fellow-servant with the other two men, but a vice principal over them.

III. The crucial question in this case, however, pertains to the relation existing between Varwig and the plaintiff at the time of the latter's injury, considering the nature of Varwig's acts at that particular time and the attending circumstances. The argument advanced by learned and astute counsel for appellant is that Varwig's act at the particular time in question, in undertaking to put this wire on the bobbin, was one relating purely to his duties as a colaborer with plaintiff, and that his negligence, if any, in the premises was that of a fellow-servant; in other words, granting that Varwig was ordinarily a vice principal as to plaintiff, when the three machines were being operated together, nevertheless, for the performance of the particular act in question, Varwig had for the time being stepped aside, as it were, from the capacity of vice principal, and became a fellow-servant with plaintiff.

In Fogarty v. Transfer Co., supra, a leading case on the subject in this State, the court quoted approvingly from Railroad v. May, 108 Ill. l. c. 298, as follows:

"The mere fact that one of a number of servants who are in the habit of working together in the same line of employment, for a common master, has power to control and direct the actions of the others with respect to such employment, will not of itself render the master liable for the negligence of the governing servant, resulting in an injury to one of the others, with-

out regard to other circumstances. On the other hand, the mere fact that the servant exercising such authority, sometimes, or generally, labors with the others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over the others. Every case, in this respect, must depend upon its own circumstances. If the negligence complained of consists of some act done or omitted by one having such authority, which relates to his duties as a colaborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable. For instance, if the section boss of a railway company, while working with his squad of men on the company's road, should negligently strike or otherwise injure one of them, causing his death, the company would not be liable; but when the negligent act complained of, arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his colaborers, the master will be liable."

Although that case involved the law of Illinois on the subject, the court declares the rule to be the same in Missouri, citing the prior decisions of our Supreme Court upon this question. [See, also, Hollweg v. Bell Tel. Co., 195 Mo. 1. c. 157, 93 S. W. 262; Hawk v. Lumber Co., 166 Mo. 1. c. 129, 65 S. W. 1022; Bane v. Irwin, supra; MyIntyre v. Tebbetts, supra; Bein v. Transit Co., supra; Rigsby v. Oil Well Supply Co., 115 Mo. App. 1. c. 314, 91 S. W. 460; English v. The Rand Shoe Co., 145 Mo. App. 1. c. 450, 122 S. W. 747.]

In Rigsby v. Oil Well Supply Co., supra, this court speaking through NORTONI, J., said: "It of course necessarily follows that, although the servant, who is a vice principal as to certain of his duties, and while engaged in such duties which are personal to and absolute upon the master, he is always, when engaged in the ordinary duties of the servant in so far as he

thus disrobes himself of the master's duties, and participates in those of a colaborer, a fellow-servant to that extent, and his negligence, while thus acting as a fellow-servant, will not charge the master with liability to the fellow-servant therefor. . . . And hence the law is well established that it is the act from which the injury results, performed by the person occupying this dual capacity, and not the rank, which is the true test of the master's liability thereunder.''

And in English v. Rand Shoe Co., supra, this court speaking through the same learned judge said: ''The doctrine is firmly established in this State with respect to the master's liability asserted on the grounds of negligence in the servant occupying a dual capacity, to the effect that it is the *character of the act,* and *not the rank* of the servant, which determines the liability or nonliability in a given instance.'' [Citing the Fogarty, Bein, Rigsby and McIntyre cases, supra.]

In the case before us, however, the liability of the master does not turn upon whether the manual act of Varwig in attempting to put the wire through the journal of the flier and his negligence, if any, in so doing, is to be considered as the act and the negligence of a fellow-servant on the one hand or that of a vice principal on the other; although it is said that this question is one to be determined by the court and not to be submitted to the jury. [Radtke v. Basket & Box Co., supra, l. c. 23-26.] This is for the reason that plaintiff's injury came about, not because of the isolated act of Varwig in permitting the wire to slip from his fingers, but in consequence of the latter, combined with the order or direction given by Varwig to plaintiff to watch how Varwig put the wire through the journal, causing plaintiff to place his face in close proximity to the end of the wire in order to receive instructions in this regard.

At the time in question, Varwig was clothed by the master with power and authority to give orders and

directions to the plaintiff, and it was his duty to instruct the latter. The order was given without any warning to plaintiff of the danger of placing his eyes in such close proximity to the end of the wire, although Varwig knew that plaintiff was nearsighted. The duty to warn is of course a nondelegable duty. In the giving of such an order, without warning of the danger which might attend its obedience, the jury might well find that Varwig was negligent, and his negligence in the premises is the negligence of the master.

In Radtke v. Basket & Box Co., supra, the opinion quotes approvingly from earlier decisions of that court as follows:

"In Browning v. Railway Co., 124 Mo. l. c. 70, it is said: 'It must be considered as settled in Missouri (in accord with the generally accepted law elsewhere) that where an employee sustains injury in consequence of the combined negligence of the master and of some fellow-workman, he will not, for that reason alone, be denied a recovery. [Young v. Iron Co., 103 Mo. 324.]' To like effect is Bluedorn v. Railway Co., 108 Mo. l. c. 448, wherein BLACK, J., said: 'Nor is the plaintiff's action defeated because he and the persons in charge of the train were fellow-servants; for the train was run at a rate of speed prohibited by the ordinance, pursuant to a time card prepared and promulgated by the defendant. The unlawful and negligent act was the joint act of the defendant, and of the servants in charge of the train. The law is well settled that one servant may recover for an injury caused by the combined negligecne of the master and a fellow-servant.' "

In Rigsby v. Oil Well Supply Co., supra, this court said: "There is an additional reason, however, why we think liability might attach to the master in this case even though the act of Austin as fellow-servant contributed to cause the lumber to fall, and that is, it is well-settled law that when the negligence of

the master is combined with that of the fellow-servant in producing the injury, and the negligence of neither alone is the efficient cause, both the master and fellow-servant are liable and the injured servant may maintain his action against either or both, on account of such injury. [Browning v. Railway Co., 124 Mo. 55, 27 S. W. 644; Young v. Shickle, H. & H. Co., 103 Mo. 324, 15 S. W. 771; Irmer v. Brewing Co., 69 Mo. App. 17; 12 Am. and Eng. Ency. Law (2 Ed.), 905.]''

The case before us falls clearly within the doctrine of the cases to which we have just referred. That is to say, if we concede that Varwig was a fellow-servant in so far as concerns his act of putting the wire on the bobbin, he nevertheless was acting as a vice principal in instructing plaintiff and in giving the order in question. Plaintiff's injury was not caused by the negligence of Varwig alone in permitting the wire to slip from his hand, nor was it caused alone by his negligence in giving the order without a warning of danger. Both of his acts combined to produce plaintiff's injury; neither alone would have caused it. If, therefore, the jury find Varwig to have been negligent in the performance of these acts, then, conceding one to be the act of a fellow-servant, the injury is due to the combined negligence of the master and that of a fellow-servant, for which the master is liable. We think that the court did not err in overruling defendant's demurrer to the evidence.

The instructions are not challenged and no point is made as to the amount of the verdict. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.